IN ERROR.
.......
ALBANY,
February, 1815.

VERPLANK
v.
STERRY.

PHILIP VERPLANK, *impleaded with* JAMES ARDEN, } *Appellant.*
RICHARD D. ARDEN, *and* DE WITT CLINTON, }

*against*

ROBERT STERRY, *and* LOUISA ANN, *his wife,* Respondents.

A deed may be delivered by words, or acts without words, and the delivery may be either to the grantee or to a third person, without any special authority, for the use of the grantee. If a deed has once been delivered, so as to take effect, a second delivery can be of no avail.

A conveyance, voidable on account of fraud or covin, may be made valid and effectual by matter *ex post facto.*

Marriage is a valuable consideration; and if the grantee of a voluntary deed gains credit by the conveyance, and a person is induced to marry her on account of the provisions made for her in the deed, such conveyance, on the marriage, ceases to be voluntary, and becomes good against a subsequent *bona fide* purchaser for a valuable consideration.

And it makes no difference whether any particular marriage was in contemplation at the time of the voluntary settlement, or that the grantee married without the consent of her father, the grantor.

Whether a voluntary conveyance, by a father in affluent circumstances, and not indebted, to trustees, for the use of his daughters, for life, and in case of their death, for their children; honestly and fairly made, without any intention to deceive or defraud any person, is not good against a subsequent *bona fide* purchaser for a valuable consideration, having notice of such prior voluntary deed? *Quere;*

THIS was an appeal from the court of chancery. The respondents filed their bill, in the court below, against the appellant, and the others, above named, stating that *Louisa Ann,* one of the respondents, is the daughter of *James Arden,* by *Eliza Arden,* his wife, now deceased. That during her last illness, and in contemplation of approaching death, the said *Eliza* requested her husband, *James Arden,* to unite with her in making a suitable and permanent provision for their daughters; to which request he acceded, assuring his dying wife, that the contemplated arrangement for such provision should never be thereafter disturbed by him. In pursuance and execution of this arrangement, as it respected the said *Louisa Ann, James Arden* and his wife, before the intermarriage of the respondents, by a deed duly executed, bearing date the 25th of *November,* 1805, for the consideration of their natural love and affection towards the said *Louisa Ann,* and for the further consideration of one dollar, paid to them by *De Witt Clinton* and *Richard D. Arden,* parties of the second part, bargained, sold, and conveyed, to the said *De Witt Clinton* and *Richard D. Arden,* their heirs and assigns for ever, in joint tenancy, a certain lot of ground, messuage, and dwelling house, in *Greenwich-street,* in the city of *New-York,* to have and to hold the same, &c., upon the *trust* and confidence that the said *Louisa Ann* should stand seised of the lot and premises, for and during her natural life; and upon the further trust and confidence, that, in case the said *Louisa Ann* should die, leaving lawful issue, that then the said trustees should stand seised of the premises, in trust, for the benefit of such child or children, of the body of the said *Louisa Ann* lawfully to be begotten, in fee simple; and for want of such child or children, then in trust for the benefit of all and every the person and persons, their heirs and assigns for ever,

IN ERROR.
........
ALBANY,
February. 1815.

VERPLANK
v.
STERRY.

as would be entitled to the same by the laws of the state, in case the said *James Arden* had died intestate, and that deed had never been made. That the deed was, at, or shortly after, its execution, delivered, by the grantors, into the hands of *Louisa Ann*, the cestuy que trust therein named. That the premises conveyed were worth 25,000 dollars. That after the execution and delivery of the deed, and before intermarriage of the respondents, the said *Eliza Arden* died, to wit, on the 4th of *August*, 1806. That the deed, from the time of its delivery until the death of her mother, and a considerable time afterwards, remained in the possession of the respondent, *Louisa Ann;* but, some time in the year 1807, and before the intermarriage of the respondents, *James Arden* requested the respondent, *Louisa Ann,* to place the deed under his charge, assigning as a reason, that she had no place convenient for keeping it, and that it would be more secure in his custody. That she, *Louisa,* accordingly, delivered the deed to him, for safe keeping only, and without any intention of relinquishing or impairing her estate or right under the same. That on various occasions, before, as well as after, the delivery of the deed to him, he, *James Arden,* represented and declared that the premises belonged to *Louisa Ann,* and fully recognised her estate and title thereto, by virtue of the said deed. That, afterwards, and before the intermarriage of the respondents, *James Arden* intermarried with his present wife, and the respondent, *Louisa Ann,* being apprehensive respecting the said deed, urged him to have it deposited in the custody of some other person ; and he, accordingly, on the 8th of *January,* 1809, deposited it in the possession of *De Witt Clinton,* one of the trustees, with whom it still remained. On the 11th of *December*, 1809, the respondents intermarried, and have a child born, and still living. The respondent, *Robert Sterry,* when the marriage took place, understood and believed that the said *Louisa Ann* had a beneficial interest in the trust premises, according to the conveyance. That the said *James Arden* fraudulently executed a deed of conveyance of the said trust premises, to the appellant, *Philip Verplank,* a relation, who, knowing the interest of the respondents in the premises, fraudulently accepted such deed, and claimed to hold the premises by virtue thereof: they, the said *James Arden* and *Philip Verplank,* thereby intending to defraud the respondents, and defeat the said deed in trust for

the said *Louisa Ann,* and the estate thereby created. That the pretended deed to *Verplank* was dated the 11th of *December,* 1809, and expressed to be in consideration of a large sum of money paid by him to the said *James Arden;* but that, in fact, the deed was not executed on that, but on some subsequent day, and fraudulently dated anterior to its actual delivery; and that if, in fact, it was executed on the 11th of *December,* 1809, it was so executed and accepted at an hour subsequent to, and with full knowledge of the intermarriage of the respondents; and that the consideration mentioned in the deed to *Verplank,* was never truly paid or secured by him to the said *James Arden,* from the proper funds of the said *Verplank.* The bill prayed that the right of the respondents to the premises in question might be established by a decree of the court of chancery, and that the defendants below, or such of them as it might concern, might account with the respondents for the rents and profits of the premises, and pay over the same to them, and that they might be let into possession of the premises; and that the same might be decreed to be conveyed to them, or, in some effectual way, secured for their benefit; and for such further and other relief, &c.

The defendants below answered separately.

The appellant, *Verplank,* in his *answer,* stated, that before the execution of the deed of *James Arden,* and his wife, to him, he had heard that the said *James Arden* had made some provision for his daughters, out of property situated in *Greenwich-street,* but who informed him he could not recollect, and was wholly ignorant of the circumstances attending such provision, or the manner in which such settlement was made; but that at the time the deed from the said *J. Arden,* to him, was executed, he had no knowledge, or notice, that the premises conveyed to him had been previously conveyed to the trustees, on the trust, as stated in the bill of the respondents; that he became the purchaser of the premises, of the said *James Arden,* for the sum of 16,000 dollars, and that, on or about the 11th of *December,* 1809, received the deed, which was set forth verbatim, in his answer, from *Arden* and his present wife; that for several months prior to the execution and delivery of the deed to him, for the premises in question, he was in treaty with *Arden* for the purchase thereof, and the terms of purchase were partly agreed on, at least one month prior to the said 11th of *December,* 1809;

IN ERROR.
........
ALBANY,
February, 1815.

VERPLANK
v.
STERRY.

and that at the time of the execution of the said deed to him, he had no knowledge, to the best of his recollection, of the inter-marriage of the respondents; that he could not recollect the precise day on which the deed to him was executed, but is positive that it was executed between the 11th and 14th days of *December*; that he actually paid the whole consideration mentioned in the said deed; and has, since the execution thereof, received the rents and profits of the premises in question, to his own exclusive use. That he married the niece of the said *James Arden*; and he insisted that the prior deed, a conveyance in trust, for the said *Louisa Ann*, was *voluntary*, and void, by virtue of the act, entitled, " an act for the prevention of frauds;" and he denied all collusion and fraud.

*James Arden*, in his *answer*, stated, that on the 25th of *November*, 1805, he was seised in fee, of the premises in question; that he, and his then wife, *Eliza*, now deceased, being about that time minded to make some provision for their daughter, *Louisa Ann*, and her children, if she should have any, executed the deed mentioned, about, or shortly after, the time it bears date, in the presence of two witnesses; and that he believed that he and his wife may have used the formal words of delivery of the deed: that, after it was executed, it remained in his possession and power, from thenceforth, until, or about, the 9th of *January*, 1809, when his daughter, *Louisa Ann*, having expressed some apprehension that the deed, in case of his death, might be lost or destroyed, he placed the same in the hands of *De Witt Clinton*, for her benefit, stating to him, at the time of so depositing the deed, in the presence of his present wife, and his said daughter, *Louisa Ann*, and her sister, that it was to be understood that the income of the property should come to him during his life, and that if *Louisa Ann* married without his consent or approbation, that then the said deed should not operate, or that he made use of words to that effect. That the respondents, afterwards, intermarried, but without his knowledge, consent, or approbation. That the yearly value of the premises was from 1,300 to 1,500 dollars, which he had received since the date of the said deed of trust, until the sale and conveyance of the premises to *Verplank*. That considering himself, in consequence of the said *Louisa Ann's* marriage, without his consent, as the absolute owner of the premises, he did, on or about the 11th of *December*, 1809, sell and convey the premises to the appellant, *Verplank*, for the conside-

IN ERROR.
........
ALBANY,
February, 1815.

VERPLANK
v.
STERRY.

ration of 16,000 dollars. That the deed to *Verplank* was executed on some day between the 11th and 14th of *December,* 1809, but on which day he did not recollect; but it was after the intermarriage of the respondents.

The answer of *De Witt Clinton,* was substantially the same as that of *James Arden,* in regard to the deposite of the deed of trust, and the verbal declarations of *Arden,* at the time; but though the daughter acquiesced in her father's receiving the rents during his life, yet that she did not acquiesce in the declaration, that the deed should not operate, in case she married without his consent.

*Richard D. Arden,* the other appellant, also put in his answer; but knew nothing of the transaction relative to the deed, or its contents, except from a copy shown to him by *James Arden.*

The material parts of the evidence contained in the depositions of the witnesses, are sufficiently stated by the judges in delivering their opinions.

The cause having been brought to a hearing in the court below, the chancellor, on the 3d of *October,* 1814, decreed, that the deed of conveyance from *James Arden,* and *Eliza* his wife, to *De Witt Clinton* and *Richard D. Arden,* was duly executed and delivered on the 25th of *December,* 1805, so as to pass the estate and interest in the premises therein described, to the said *De Witt Clinton* and *Richard D. Arden,* and to vest the same in them, to the uses, and upon the trusts therein mentioned; and that the said deed of conveyance was valid and effectual in law accordingly. And that, as it satisfactorily appeared to the court, that *Robert Sterry,* and *Louisa Ann,* had intermarried before the execution of the deed of the same premises to *Philip Verplank,* of the 11th of *December,* 1809; and that the said *Verplank,* at the time he accepted the said deed, last mentioned, had notice of the said intermarriage; and also had notice of the said deed of conveyance to the said *De Witt Clinton* and *Richard D. Arden;* it was further decreed, that the said deed from the said *James Arden* and wife, to the said *Philip Verplank,* is void, as against the said *De Witt Clinton* and *Richard D. Arden,* as trustees, &c.; and that the same be set aside accordingly, as against the said parties. And the said *Verplank* was further ordered to bring the said deed of conveyance to him, into court, and deposite the same with the register, to abide the further order

of the court; and that any of the parties, as to that matter, have leave to apply to the court for further directions.

It was further decreed, that *Sterry* and his wife, in right of the wife, be let into the immediate possession of the premises, and into the perception of the rents and profits thereof, in arrear, and thereafter to accrue, and become payable; or that the said *De Witt Clinton* and *Richard D. Arden* be let into possession, as trustees, &c.; and in case they, or the survivor of them, should take possession of the premises, they, or the survivor, should take the rents and profits in arrear, and thereafter to accrue, in trust for, and pay over the same, from time to time, to the said *Robert Sterry,* and *Louisa Ann,* his wife, in right of his wife, during their joint lives, and to the said *Louisa Ann,* during her life, in case she should survive her said husband; or that the said *De Witt Clinton* and *Richard D. Arden,* or the survivor of them, should permit the said *Robert Sterry,* and *Louisa Ann,* his wife, in right of the said *Louisa Ann,* to take the said rents and profits during their joint lives; and the said *Louisa Ann* to take the same during her life, in case she survived her husband; and that after the death of the said *Louisa Ann,* the rents and profits should be received and applied according to the uses and trusts, in the deed of trust, before mentioned, limited, and declared; and that the trustees, or the survivor of them, and any other person claiming interest therein, under the said deed, be at liberty to apply to the court for its further directions in that behalf. And it was further decreed, that the said *De Witt Clinton* and *Richard D. Arden* should, within twenty days after notice of the said decree, cause the said deed to be acknowledged or proved, and registered according to law, for the greater safety of the title, &c. And further, that the said *Robert Sterry,* and *Louisa Ann,* his wife, during their joint lives, and the said *Louisa Ann,* after the death of her said husband, if she survived him, should be at liberty to use the names of the said trustees, or the survivor of them, and to use the said deed, for the purpose of prosecuting at law, if necessary, to obtain the possession of the premises, or to recover the rents and profits, &c. And further, that the said *Philip Verplank* account with the said *Robert Sterry,* and *Louisa Ann,* his wife, for the rents and profits of the premises, from the 11th of *December,* 1809, and that it be referred to one of the masters, to take the account accordingly; and that, in taking the account, the master charge the said *Philip*

IN ERROR.
.......
ALBANY,
February, 1815.

VERPLANK
v.
STERRY.

IN ERROR.
......
ALBANY,
February, 1815.

VERPLANK
v.
STEARY.

*Verplank* with the rents of the premises received, which might, without wilful default, have been received for the same ; and that the master make just allowances to the said *Philip Verplank*, for taxes and repairs ; and that he report thereon to the court, &c. ; and that the question of costs, and all further directions, be reserved until the said report come in.

From this decree, as far as his rights were affected by it, the said *Philip Verplank* entered his appeal to this court.

The CHANCELLOR gave the reasons for his decree.(a)

*Baldwin*, for the appellant, contended, 1. That there was no delivery of the deed from *James Arden*, and his wife, to *De Witt Clinton* and *Richard D. Arden*, at the time of its execution. The grantees were not present, and the careless manner in which the deed was kept, showed that there was no delivery to the respondents. To make good a delivery of a deed, it must be delivered to the grantee, or to some person to be delivered to him ; and it must be put out of the power of the grantor.* If there was any delivery, it was that which was made in *January*, 1809, which was on two conditions, first, that the grantor should receive the rents and profits during life ; and, second, that the deed should be inoperative, in case *Louisa Ann*, the *cestuy que trust*, married without the consent of the grantor ; and this condition has failed. Any declaration made by the grantor, at the time of the delivery, is binding.† Whether the daughter assented to the condition, or not, is immaterial. The grantor had a right to annex what condition he pleased to his gift, and the grantee must receive it with the conditions, or not at all.

2. The deed was *voluntary* and void, as against a subsequent purchaser for a valuable consideration.‡ This was the established rule of law.

3. It appeared from the case, that the appellant was a *bona fide* purchaser, without notice of the deed, or intermarriage of the respondents ; but that even if the appellant had notice of the prior deed, or of the intermarriage, it could not affect his rights as a purchaser for a valuable consideration. In support of these positions, he cited the following authorities : *Sugden's Law of Vend.* 431. 436. 508. 510. 1 *Fonbl.* 269, 270, 271. 14 *Vesey*, 519. 7 *Vesey*, 219. 1 *Vesey*, 456. 6 *Vesey*, 332. 2 *Vesey*, 10. 51. 299. 3 *Atk.* 388. 1 *P. Wms.* 577. 2 *P.*

* 3 *Cruise*, 29. sec. 52.

† 1 *Johns. Cas.* 114.

‡ 2 *Bro Ch Cas.* 148. 4 *Bos & Pull. Rep.* 232. 2 *Taunt Rep.* 82, 9 *East's Rep.* 59.

(a) See the reasons at length, in the report of the case in the court of chancery.

*Wms.* 359. *Gilb. Eq. Cas.* 11. 3 *Cruise,* 376. 2 *Wils.* 257. 2 *Bl. Com.* 300, 301. 1 *Atk.* 489. 2 *Atk.* 54. 174. 2 *Bro. Ch. Cas.* 291. 1 *Ch. Cas.* 259. 2 *Ch. Cas.* 216. 2 *Vesey,* 440. *Skinner,* 423. 1 *East,* 95. 9 *Vesey, jun.* 190. *Roberts on Frauds,* 495. 3 *Atk.* 438. 1 *Vesey,* 464. *Cowp.* 278. 705. *Cro. Eliz.* 445. 1 *Ch. Rep.* 196. 2 *Dickens,* 444. 2 *Vent.* 193. 2 *Lev.* 246. 1 *Keb.* 486.

IN ERROR.
.......
ALBANY,
February, 1815.

VERPLANK
v.
STERRY.

*Griffin* and *Riggs,* contra, contended, 1. That there was a good and valid delivery of the trust deed, on the 25th of *December,* 1805. A deed may be delivered to a third person, for the grantee, and there may be a constructive, as well as an actual delivery of a deed.* It was not necessary that the deed should be delivered to the trustees ; it is sufficient that it was delivered to the person interested.† The handing of the deed, in 1809, to Mr. *Clinton,* could not be called a delivery, in law. It was a deposite merely. If a deed has been once delivered, there cannot be a second delivery, and no subsequent acts or declarations can have any operation or effect.‡

No parol evidence is admissible to explain this deed ; but it is attempted to attach certain conditions to the delivery ; but after a deed is reduced to writing, it cannot be explained by parol testimony.§ Had the conditions been contemporaneous with the delivery of the deed, they could not be proved by parol.‖ At the time of the execution and delivery, in *December,* 1805, not a word was said of any conditions ; and in the very few instances in which, as exceptions to the general rule, courts have allowed parol evidence to be given, it has been where a mistake has been satisfactorily proved. There is no pretence of any fraud in obtaining the deed, and though there is a suggestion of a mistake, there is not the least proof of it. A trust estate is to be regarded as a legal estate, though it may be necessary to apply to a court of chancery to obtain the rights of the trustees.**

A *voluntary* deed is as much respected, in courts of law and equity, as a deed given for a valuable consideration.†† A *voluntary* deed cannot be revoked ;‡‡ and it will be carried into specific execution by a court of chancery, equally as one given for a valuable consideration.§§

The bill expressly charges *Verplank* with notice of the prior deed, and his answer does not negative the charge. Notice

* 4 *Cruise's Dig.* 28. 2 *Duer,* 167. b. *Shep Touchst.* 58. *Cro. Eliz.* 7. † *Jenk. Cent* 195. 1 *Johns. Cas.* 114. 13 *Vin. Ab.* 22. (K.)

‡ *Co. Litt.* 48. b. *Shep. Touchst.* 60. 4 *Cruise,* 29.

§ 5 *Ves. jun.* 722. *Sugd.* 105.

‖ 13 *Viner,* 28. *Shep. Touchst.* 58, 59.

** 2 *Bl. Com.* 337.

†† 2 *Bl. Com.* 299, 300.
‡‡ 4 *Cruise's Dig.* 205. 1 *Fonbl. Equ.* 2 3. 214. 1 *Atk.* 625. 1 *Vern. Rep.* 464.
§§ 6 *Ves. jun.* 656. 2 *Vern.* 473.

*ought* to be denied in the answer, positively and decidedly, even though it was not charged.[*] The answer, in this case, as it does not expressly deny the notice, must be deemed impliedly to admit it. Indeed, the circumstances proved show that *Verplank* must have had notice.[†]

An honest family settlement is good, at common law, against any subsequent purchaser, with notice; but the appellant relies on the statute of frauds.[‡] But the object of this act was to set aside fraudulent conveyances, not honest family settlements. Indeed, the 4th section, which makes such fraudulent convey-ance a crime, and inflicts a penalty on the parties to it, shows the spirit and object of the act. Though the weight of the *English* authorities may, at this day, go to support the proposition that, within the statute of the 27 *Eliz.* every *voluntary* conveyance is fraudulent and void, as to subsequent purchasers for a valuable consideration; yet it will be found, that, prior to the 19th of *April*, 1775, it was held otherwise by judges of great reputa-tion; and, according to the constitution, the courts of this state are not bound by any *English* adjudications subsequent to that period.

That *voluntary* settlements were not void, merely for their being voluntary, where there was no fraud, we have the authori-ty of Lord *Hale*,[§] Lord *Rolle*,[‖] Chief Baron GILBERT,[**] Lord *Mansfield*,[††] Sir *Wm. Blackstone*,[‡‡] Lord Ch. J. WILMOT,[§§] and several writers on the subject.[‖‖]

The leading case to the contrary, *Evelin* v. *Templar*, (2 *Bro. Ch. Cas.* 1787.;) and all the subsequent cases, go on the ground, expressly, that so many estates in *England* stood upon the rule that the voluntary settlement was void, as against a purchaser for a valuable consideration, that it was too late and too hazard-ous to shake it; though the judges who so decided did not hesi-tate to declare, that if it were *res integra*, they should have come to a different conclusion.[***]

In *Doe* v. *Martyr*,[†††] Sir *James Mansfield* regrets the deci-sion, in *Evelyn* v. *Templar*, that even a notice of a prior voluntary settlement would not defeat a subsequent purchase for a valua-ble consideration.

In *George* v. *Milbank*,[‡‡‡] Lord *Eldon* held, that a provision for debts made in a voluntary settlement, would support it against all future creditors; and it is agreed, that a voluntary settlement is good against the grantor. He cannot revoke the

*IN ERROR.*

ALBANY,
February, 1815.

VERPLANK
v.
STERRY.

* *Prec. Ch.* 226.
3 *P Wms* 244. n.
2 *Equ. Cas. Ab.*
682. (D.) n. (b.)
3 *Atk* 815. 3 *Ves. jun.* 187 4 *Bro.
Ch. Cas.* 322.
2 *Ch. Cas.* 161.
1 *Vern.* 185.
† 2 *Fonbl.* 151.
155. *Ambl.* 311.
3 *Atk.* 490.
‡ 1 *N. R. L.* 75.
sess: 10. ch. 44.
2, 3, 4.

§ *Sir Ralph Bo-
vy's case, Vent.*
193. See, also,
*Hardres,.* 398.
*Jenkins* v. *Key-
mer,* 1 *Lev.* 150.
2 *Lev.* 161. *La-
vender* v. *Black-
stone,* 1 *Keb.* 486.
‖ *Style,* 446.
** *Gilb. L. of
Ev.* 201. (6th ed.
1801.)
†† *Cadogan* v.
*Kennel,* 1 *Cowp.*
434. *Doe* v.
*Rutledge,* id. 705.
‡‡ 2 *Bl. Com.*
296, 297.
§§ *Roe* v. *Milton,*
2 *Wils Rep.* 356.
‖‖ 1 *Fonbl. Equ.*
269, 270. n. 2 *Bl.
Com.* 297. (*Chris-
tian's* note.)
See, also, 1 *Bay's*
(*So. Car.*) *Rep.*
173.
*** *Sugden's L.
of Vend.* 433.
*Doe* v. *Waring,*
9 *East,* 64. 71.
††† 4 *Bos & Pull.*
332.
‡‡‡ 9 *Ves. jun.*
194.

deed, unless it contains a power of revocation.* The effect of this doctrine is, that though the grantor cannot retain the land in the first instance, he may convey it away to a third person for some valuable, but, in fact, nominal consideration; who may, afterwards, reconvey it to the grantor. The law, in *England*, has been so long read wrong, that the judges there feel themselves compelled to read it the same way, to support titles which had been obtained under such erroneous decisions; but our courts are under no such necessity: they are not obliged to yield to the authority of a decision, for which reasons are assigned which cannot apply to the present case.

In *Newstead* v. *Scarles*,† Lord *Hardwicke* held, that a conveyance by a widow, prior to her second marriage, to trustees, for the use of the *cestuy que trust* and her children, was not a voluntary conveyance, within the statute of the 27 *Eliz.*; and where the conveyance makes provision for future branches of the family, it is considered such a valuable consideration as prevents its being *voluntary*, within the statute.‡

But though a conveyance may be deemed voluntary, or fraudulent, in its creation, yet it may become good, by matter *ex post facto*.§ An after marriage, in consequence of the settlement, is, on all hands, allowed to be a sufficient consideration to support the conveyance.|| Here, the marriage of the *cestuy que trust* took place prior to the purchase by *Verplank*. The husband is to be considered in the light of a purchaser. It is not necessary that the settlement should have been made with a view to any particular marriage, nor that the marriage was superinduced by the settlement.**

Again, *Verplank* was not a *bona fide* purchaser, for he does not deny that he had heard of the marriage; and he knew of the settlement. He is not entitled to the benefit of the statute, unless he is a *bona fide* purchaser, and for a valuable and adequate consideration.††

*Baldwin*, in reply, insisted on his former arguments, and said that Lord *Ellenborough*, in *Doe* v. *Manning*, (9 *East*, 59.,) had examined all the authorities on the subject, and showed, most conclusively, that it was the established law of *England*, prior to the year 1775, that all voluntary conveyances were, under the statute of the 27 *Eliz.*, considered fraudulent and void, against *bona fide* purchasers for a valuable consideration. The

*IN ERROR.*

ALBANY,
February, 1815.

VERPLANK
v.
STERRY.

* 1 *Vernon*, 100.
3 *Atk.* 238.

† 1 *Atk.* 265.

† *Nunn* v. *Wilsmore*, 8 *Term Rep.* 521 9 *East*, 70.

§ *Sugden's L. of Vend.* 436, 437. 1 *Sid.*133. 1 *East*, 92. 9 *Ves. jun.* 190. *Skinner*, 423. 1 *East*, 95.
|| 9 *East*, 69. 9 *Ves. jun.* 190. 193.

** *Prec. in Ch.* 275. 377. 2 *Eq. Cas. Ab.* 46. 9 *East*, 69. 5 *Ves. jun.* 862.

†† *Cro. Eliz.* 44. *Comp.* 705.

IN ERROR.
......
ALBANY,
February, 1815.

VERPLANK
v.
STERRY.

* 5 Vesey, 862.

chancellor, in the present case, admitted that *Verplank* was a *bona fide* purchaser. It is not pretended that he had actual notice of the prior deed. All that is shown is, that he was informed that Mr. *Arden* had made some provision for his daughters, in property in *Greenwich street*.

In *Brown* v. *Carter*,* the master of the rolls did not go into the consideration of the effect of the statutes of *Elizabeth*, on the settlement. Though where a marriage is in view at the time the settlement is made, it may be a good consideration; yet where it is made without any such view, and some person should, afterwards, marry the daughter, against his consent, and who is particularly odious to him, it cannot be said to be a consideration with the father for making the settlement on his daughter.

YATES, J. The first question arising in this cause, is as to the execution of the deed of the 25th of *November*, 1805, from *James Arden*, and *Eliza*, his wife, to *De Witt Clinton* and *Richard D. Arden*, in trust for *Louisa Ann*, the daughter of the grantors.

From the testimony of one of the subscribing witnesses, who proves the execution of this deed, it does not appear that either of the trustees were present, or that any condition was mentioned at the time. If it was intended to have been a conditional delivery, it is an unusual departure from the course the grantors ought to have adopted, in omitting to state the condition (if any existed) to the subscribing witnesses. This omission raises a strong presumption against the operation of the deed, in any manner different from the purposes expressed in it; and from the unquestionable possession of this deed by the daughter, subsequently, the inference is irresistible, that the delivery was to her, she being immediately interested, and that it took place in the presence of Mrs. *Arden*, under whose maternal auspices, and at whose particular instance and request, the settlement on her daughter was made. It was not necessary for the trustees to be there personally to receive it. In *Taw's executor* v. *Bury*, (3 *Dyer*, 167. b.,) a delivery to a third person, without speaking of it as the deed of the party, the deed is held good, and is, in law, the deed of the defendant, before any delivery over to the party; and the refusal of the party cannot undo it, as the deed of the party from the beginning.

I do not think this transaction is enveloped in such mystery, as not to admit of a satisfactory explanation.

IN ERROR.
........
ALBANY,
February, 1815.

VERPLANK
v.
STERRY.

It is unreasonable to suppose that this deed was intended to be subjected to the future control of the husband. It was executed at the instance of Mrs. *Arden*, during her illness, and in contemplation of approaching death, for the express purpose of making a permanent and suitable provision for the support and maintenance of her daughter; and her subsequent declarations show what her intentions and expectations were, in relation to the business, which, it appears, had given her much anxiety and uneasiness before it was done. She expressed to several of the witnesses her satisfaction with her husband's conduct, in complying with her wishes, and that she felt easier, and better, since Mr. *Arden* had made a settlement on her daughters.

The idea that he intended, at the time, to deceive the expiring partner of his bosom, cannot be indulged for a moment. It appears he acted openly and decidedly, by leaving the deed in the possession of the daughter, in the presence of the mother, to be disposed of as they might think proper. The manner in which he, afterwards, obtained possession of this deed, is satisfactorily explained by some of the witnesses, and shows decidedly, that, previous to his taking it from his daughter, he had assumed no control over it.

Not one of the witnesses who were present when the deed was signed, mention that any condition was stated at the time; and those on the part of the appellant, who give evidence on the subject, appear to have collected their information from desultory conversations, at different periods, with members of the family; a species of evidence, at all times, dangerous to be received, to explain the intent, or control the operation, of a written instrument, even in a court of equity, on the ground of a mistake, which, in this case, it is alleged, was made by *Abraham Skinner*, who drew the deed; but there is no evidence to support the allegation, except the assertion of *Arden* himself.

If this mistake had actually taken place, it is somewhat extraordinary that the appellant has not availed himself of the benefit of *Skinner's* testimony to explain it; and still more so, that he did not cause it to be rectified; for, by the evidence of *Richard D. Arden*, the deed was kept in his father's desk, in

IN ERROR.
........
ALBANY,
February, 1815.
VERPLANK
v.
STERRY.

the office below, until it was taken to his mother's bed room to be signed. A sufficient length of time, therefore, must have intervened, after it was drawn, and before it was signed, to have enabled him to correct the error. Under these circumstances, I do not believe the deed was drawn different from *Arden's* intentions at the time; but allowing the whole of the testimony to have its due weight, on the ground of mistake, the witnesses on the part of the respondents, as to conversations with *Arden*, and others of the family, showing a different understanding with regard to the transaction, greatly preponderate; so that, without noticing the subsequent conduct of Mr. *Arden*, I think, from the facts disclosed by the evidence in the case, there remains no ground for reasonable doubt, that the deed was perfected at the time, and that he then intended it should operate, unconditionally, according to the terms of it; and the subsequent delivery of this deed to Mr. *Clinton*, upon the conditions stated at the time, can be of no avail; it can afford him no possible benefit. He had devested himself of the property the moment he executed and delivered the deed, in the first instance; and, of course, retained no authority to give it an operation different from what was contained in it.

A deed cannot be delivered twice; for, if the first delivery has any effect, the second will be void. (3 *Cruise's Dig.* 29. sect. 59.) Nor can this second delivery prevent or limit its operation, if even it is admitted that the deed is voluntary. In 2 *Vernon*, 473., " A. had made a voluntary settlement of an estate, subject to some annuities, in trust for his grandson and his heirs; and, afterwards, he makes another voluntary settlement of the same estate, to the use of his eldest son for life, and to his first, &c. sons in tail, with remainders over; and, by will, gives a considerable estate to his grandson." Although it was proved that A. always kept the first settlement in his custody, and never published it, and it was, after his death, found amongst waste paper, and the last deed was often mentioned by him, and he told his tenants the plaintiff was to be their landlord after his death, yet the son could not be relieved against the first settlement. In 1 *Vernon*, 464., the court say, " A settlement, though voluntary, is not revocable."

This deed, then, having been duly executed, and it being evident that its validity could not be affected by a second delivery, a further question remains to be determined; whether

its operation can be defeated by the subsequent deed from *James Arden*, and *Ann*, his present wife, to the appellant, dated on or about the 11th of *December*, 1809.

I do not think we are called upon to express an opinion on the question whether a voluntary settlement ought not, according to the words of the statute, to be fraudulent and covenous, and for the purpose and intent to deceive, in order to make it void against a subsequent purchaser; but from the facts in this case, it will be sufficient, according to my view, to determine whether the first deed is, in fact, a voluntary conveyance, or whether this court are not bound, under the circumstances, to consider it a deed for a valuable consideration.

It appears, by the declaration of trust contained in it, that a life estate in the premises was given to *Louisa Ann Arden*; and in case she should die, leaving lawful issue, that then it should be held in trust for the benefit of such issue, &c.

In *Munn* v. *Wilsmore*, (3 *D. & E*. 529.,) Lord *Kenyon* observes, that very small considerations have been holden sufficient to give validity to a deed, when, in framing family settlements, limitations are made in favour of the distant branches of a family; such remainders are not considered as voluntary, if the object of the parties in making the settlement was fair and honest.

The case of *Newstead and others* v. *Searles and others*, (1 *Atk.* 264.,) supports the same principle. It would seem, from those cases, that the limitation to distant issue would alone be sufficient consideration to protect this deed; but connect with it the marriage of *Sterry*, and I think its validity cannot be questioned. Marriage, of itself, is a sufficient consideration. That *Louisa Ann's* right to the property forwarded the marriage, is evident; because Mr. *Sterry*, as a discreet and prudent man, must have felt an interest in the future support and maintenance of his family, and the avails of this property towards such support might well have been contemplated by him. This appears to have been the case, from his conversation with Colonel *Hawkins* on the subject. Indeed, proper feelings for the comfort as well as happiness of the object of his attachment, must have given importance to the immediate possession of this property: it, therefore, operated as an inducement to the connexion.

IN ERROR.
.......
ALBANY,
February, 1815.

VERPLANK
v.
STERRY.

This marriage took place on the 11th of *December*, 1809, and the deed to *Verplank* was executed between the 11th and 14th of the same month; so that the marriage must, at all events, have been solemnized before the deed existed.

*Sugden*, (in his *Law of Vendors*,) in treating on voluntary settlements, (page 437.,) says, " If a voluntary grantee gain credit by the conveyance to him, and a person is induced to marry him on account of such provision, the deed, though void in its creation, as to purchasers, will, on the marriage being solemnized, no longer remain voluntary, as it was in its creation, but will be considered as made upon a valuable consideration. This principle is recognised in *Brown* v. *Carter*, (5 *Vesey*, jun. 862.,) and by Lord *Ellenborough*, in the case of *Otley* v. *Manning*, (9 *East*, 69.)

If, then, it is even admitted that the conveyance of the 25th of *November*, 1805, to Messrs. *Clinton* and *Arden*, was voluntary in its creation, it is evident it assumed a different character in consequence of the marriage ; as that alone must be deemed a valuable consideration, which gave it a validity not to be affected by the subsequent deed to the appellant.

The chancellor's decree being founded upon the validity and operation of this deed, my opinion is, that the same ought to be affirmed.

SPENCER, J. The first point which claims the consideration of the court, is, whether the deed from *James Arden* to *Louisa Ann*, his daughter, was so far legally and duly executed, on the 25th of *November*, 1805, as, between the parties to the deed, to devest the grantor of all his estate and interest in the premises granted thereby.

*James Arden*, by his answer, admits, that shortly after the time the deed bears date, (25th of *November*, 1805,) he signed and sealed it, and believes that he and his wife may have used the formal words of delivery; but he insists that the deed remained in his possession and power, thenceforth, until on or about the 9th of *January*, 1809, when, to relieve the apprehensions entertained by his daughter, that, in case of his death, it might be lost or destroyed, he placed the same in the hands of *De Witt Clinton*, one of the trustees, for her benefit, with certain conditions accompanying such tradition ; viz. that the income of the property should come to him during his life, and that, if his

daughter married without his consent or approbation, then the deed should not operate.

The proofs in the case, in my judgment, are decisive, that the deed was legally and effectually executed, so as to become operative on the 25th of *November*, 1805, notwithstanding the denial and answer of *Arden*.

IN ERROR.
........
ALBANY,
February, 1815.
VERPLANK
*v.*
STERRY.

Mrs. *Braine* was present at the execution of the deed. She proves that it was read over by *Arden*, and that thereupon it was executed in the bed room of Mrs. *Arden ;* that being very intimate with *Arden's* daughters, and very frequently with them, she saw the deeds in their bed room ; that on one occasion, she heard her cousins read over their deeds; that on a particular occasion, *James Arden* came into their bed room, and seeing the deeds lying on the projection of a book case, or wardrobe, he reproached them with carelesness, and, with their consent, took the deeds into his own keeping.

Mrs. *Servant* confirms all the material facts deposed by Mrs. *Braine*, relative to the custody of the deeds, by her and her sister, and their being taken by her father for safe keeping.

*Robert J. Livingston* proves that *Louisa Ann* had the custody of the deed given to her; that on a particular occasion she produced it to him, and that he read it, and now identifies it.

That Mr. *Arden* intended the two houses in *Greenwich-street* for his daughters, appears by the testimony of *William Edgar ;* and that he had in his own opinion devested himself, in favour of his daughters, of these houses, is proved by Mrs. *Talbot*, who states, that shortly after the death of Mrs. *Arden*, as she was walking in *Greenwich-street*, she met Mr. *Arden*, when Mrs. *Talbot*, pointing to the houses, asked if those were his, to which he answered, "my daughters' houses, madam ;" and then said his daughters would be good fortunes.

The fact admitted by *Arden's* answer, that he may have used the formal words of delivery, confirmed by the testimony of one of the subscribing witnesses, Mr. *Hamilton*, who proves the execution of the deed, taken in connexion with the fact, that the deeds were, for some time, in the custody of the *cestuy que trust*, *Louisa Ann*, and the total absence of all proof impeaching the force of these facts, can leave no doubt on the mind, that *Arden* not only intended an effectual execution of the deed, but that every legal formality was complied with. A deed is available if delivered to the party grantee, or even to a stranger, without special

IN ERROR.
.......
ALBANY,
February, 1815.

VERPLANK
v.
STERRY.

authority, if intended for the use of the grantee; and a deed may be delivered by words, or by deeds, without words. (*Shep. Touch.* 58., and cases cited.) The subsequent tradition of the deed to Mr. *Clinton*, if it became operative before, can have no effect; nor was it in the power of Mr. *Arden* to impose any conditions upon a grant which had already become effectual. The appellant has entirely failed to show that any fraud or mistake intervened in drawing the deed. The suggestion is altogether without support, excepting from his own allegations. It is, therefore, useless to inquire how far a deed can be impugned by the admission of parol evidence.

Admitting, for the present, that the deed from Mr. *Arden* to his daughter, Mrs. *Sterry*, was liable to be defeated by a subsequent deed, on the ground that it was voluntary, and, in a legal point of view, fraudulent, as against subsequent *bona fide* purchasers for a valuable consideration; we are, then, to inquire what operation the marriage between the respondents had in reference to the deed.

It is an undeniable proposition, that a deed, voidable, may be rendered valid and effectual by matter *ex post facto*. If a man makes a feoffment by covin, or without any valuable consideration, and the feoffee makes a feoffment for valuable consideration; and then the first feoffor enters, and makes a feoffment for valuable consideration also, the feoffee of the first feoffee shall hold the lands. (*Sugden's Law of Vendors*, 436, 437, and cases there cited.)

So, if a voluntary grantee gain credit by the conveyance, and a person is induced to marry her on account of such provision, the deed, if even voidable as to purchasers, will, on the marriage being solemnized, no longer remain voluntary, as it was in its creation, but will be considered as made upon valuable consideration. (*Sugden*, 437., and the cases there cited.) Upon this point the decisions are numerous, and I have not met with a single case or *dictum* to the contrary. *Blackstone* very correctly defines (2 *Bl. Com.* 297.) a valuable consideration to be money, *marriage*, or the like; and, he observes, the law esteems them an equivalent given for the grant.

The facts, in this case, prove, undeniably, that the marriage between the respondents preceded the deed from *Arden* to the appellant; and that the marriage itself was induced by the provision secured to Mrs. *Sterry* by the deed in question. It was

IN ERROR.
.......
ALBANY,
February, 1815.

VERPLANK
v.
STERRY.

not necessary to the validity of the marriage, or to any of the consequences following from it, that Mr. *Arden* should have given his consent to it.

It would be unnecessary to proceed further, to entitle the respondents to an affirmance of the decree of the court of chancery; nor was it absolutely necessary for the court below to go into the consideration of the question, how far forth the deed from *Arden* to his daughter would have been available to her, had not the marriage between the respondents intervened. The chancellor has seen fit to discuss and decide that point; and I do not mean to insinuate that, in doing so, he has at all travelled out of the record; the case fairly presented the question, and he has promptly decided it. Believing his decision incorrect in this particular, I think this court is bound also to express its opinion: under the circumstances of the case, to give the question the go by, would be a silent acquiescence in the opinion delivered in the court below. The point has been fully and ably argued, and it may save great expense, and future litigation, to settle it finally.

It is contended that the deed to Mrs. *Sterry* having been voluntary, and without any other consideration than that of blood and natural affection, it was in the power of the grantor, by a subsequent deed, founded on a valuable consideration of money, to defeat the operation of the first deed, in favour of the second alienee, although such second alienee knew of the existence of the first deed, and although, in point of fact, there was no original intent with either of the parties to the first deed, to defraud any subsequent purchaser.

In the present case, his honour, the chancellor, is of the opinion that the appellant is chargeable with constructive notice of the deed of the 25th of *November*, 1805, to Mrs. *Sterry*. It may well be questioned, whether this conclusion is warranted by the facts. We have no other proof of the constructive notice, than the admissions of the appellant in his answer. He admits he had heard, before the delivery of the deed to him, that *Arden* had made some provision, by deed, or otherwise, for his daughters, of property in, *Greenwich-street*. This information is loose and inexplicit; and I cannot say that I am satisfied that it was equivalent to direct notice. It is not very important, however, whether it was so, or not.

IN ERROR.
ALBANY,
February, 1815.

VERPLANK
V.
STERRY.

Our statute for the prevention of frauds has adopted, *totidem verbis*, the statutes of 13th *Eliz.* ch. 5., and 27th *Eliz.* ch. 4. The former declares void all gifts and conveyances of lands, tenements, hereditaments, goods, and chattels, had or made, devised and continued of malice, fraud, covin, collusion or guile, to the end, purpose, or intent to delay, hinder, or defraud creditors and others, of their just debts, &c. The latter declares void, every conveyance, &c., of any lands, tenements, or hereditaments, to be had or made *for the intent and purpose to defraud and deceive such person as shall purchase the lands, &c., so before conveyed.* Both statutes leave the conveyances and gifts as good between the parties, and their representatives. The 13th of *Eliz.* avoids the covenous act in favour of creditors. The 27th *Eliz.* avoids it in favour of subsequent purchasers for money or other good consideration.

The 4th section of our statute, in conformity with the 13th and 27th of *Eliz.*, inflicts a penalty and forfeiture of one year's value of the lands upon the party to such fraudulent transaction, who shall maintain or defend the fraudulent deeds or conveyances, pronounced void by those statutes; the 6th section of our statute adopts the *proviso* to the 27th *Eliz.*, and saves from the operation of the statute conveyances made *upon good consideration, and bona fide.*

If the statute of the 27th of *Eliz.* was now, for the first time, to receive a construction, it does seem to me impossible that it should be held to embrace within its purview the case under consideration.

Mr. *Arden*, as we must believe, was, in 1805, a man of a handsome and unencumbered fortune. In compliance with the earnest desire of his then wife, he deliberately sits down to make a suitable provision for his two daughters, and their issue. The transaction is open, public, and notorious. No one can believe that it entered into the hearts, or heads, of the father or his daughters, that the deeds he was executing, were with the intent, or for the purpose, of defrauding and deceiving such person as should thereafter purchase the estate thus conveyed; yet this court is called upon to consider these deeds as void, on the ground of an original covenous, guileful, and fraudulent design, coeval with the transaction between the father and his daughters. It would be with extreme reluctance that I should

consent to brand as innocent and pure a transaction as ever took place with the odious and detestable crime of fraud.

IN ERROR.
......
ALBANY,
February, 1815.

VERPLANK
v.
STERRY.

There may be cases in which a common error may have been matured into a right, and then the error must be submitted to as the lesser evil. The construction of statutes belongs to the courts of law and equity; and if a construction has been adopted by the courts, and confirmed in the one of *dernier resort;* and, more especially, if the public act on the erroneous construction, justice and policy concur in requiring that the error be adhered to; or, otherwise, no man could be safe in his dealings. The adjudications which have taken place in *England* since the 19th of *April,* 1775, form no part of the common law of this state. If, since that period, cases have occurred overruling the anterior decisions, the courts of this state can pay no other respect to them, than as the reasonings of learned and eminent men. They can have no more influence on our decisions than the lucubrations of jurists.

The cases which we met with prior to the above period, and which have turned upon the construction of the 27th of *Eliz.,* are not in harmony; though I think the preponderance, in weight and number, is decidedly adverse to the doctrine which now prevails in the courts of *Westminster-hall.*

Lord *Ellenborough,* in delivering the opinion of the court of king's bench, in *Doe* v. *Manning and another,* (9 *East,* 63.,) has collected the cases. He states that, in the cases which arose nearest the time of passing the statute, the judges seem to have thought that a voluntary settlement was only, *prima facie,* fraudulent against a purchaser. By a reference to the cases, it will appear that it was matter of evidence to the jury, on which they passed, whether a voluntary conveyance, as such, was fraudulent. There are very great names in support of this doctrine, among which may be mentioned Lord *Hale,* Lord *Rolle,* Chief Baron *Gilbert,* and Chief Justice *Eyre.* Baron *Gilbert* is extremely perspicuous and clear in his observations, and I cannot pass them by without notice. "A voluntary conveyance (he says) hath no badge of fraud, unless the party were then in debt, or in treaty for a sale of the lands; for a man may have reason to settle his estate for the good of his wife and children; and if he hath a clear estate, and no intention to sell, the settlement must be taken to be a good one; for that cannot lie under a suspicion when there is no discovery made of an intent to use

that settlement to fraudulent purposes at the time of making it." (*Gilb. Ev.*, by *Lofft*, 307.)

There are, undoubtedly, very great names who have held a contrary doctrine, that conveyances merely voluntary are voidable at law, by a subsequent purchaser for valuable consideration; and among these may be ranked Lord *Hardwicke*, Chief Justice *De Grey*, and several others. Lord *Mansfield* undoubtedly maintains the doctrine inculcated by the judges who lived nearest the passing the statute of 27th *Eliz.*, and Lord *Ellenborough*, in his opinion in the case cited, does not present the opinion of this eminent judge in the strong point of view it merited, in the case of *Doe* v. *Rutledge*, (*Cowp.* 713.) He divides the argument he there delivered, into four heads, and he specially considers, whether the deed of 1763, a voluntary deed, with no other consideration than that of blood for its support, was a fraudulent covenous deed within the true intent and meaning of the statute. He gives a distinct consideration to the question, whether the subsequent purchaser was such a one as was entitled to object to the voluntary deed. In commenting on the voluntary deed of 1763, he observes, that the 27th of *Eliz.* contains not a word impeaching voluntary settlements, merely as being voluntary, but as *fraudulent* and *covenous.* He notices the title of the statute, and the enacting part, as making provisions against such practices, as if they were a crime. He gives a criterion of determining each case; "one great circumstance," he says, " which should always be attended to in these transactions, is, whether the person was indebted at the time he made the settlement; if he was, it is a strong badge of fraud." The learned editor of Sir *Wm. Blackstone's Commentaries* (Mr. *Christian*) understands Lord *Mansfield* in the manner I have done. (2 *Bl. Com.* 297. n. 1.)

In *Doe* v. *Manning*, (9 *East*, 71.,) Lord *Ellenborough* concludes thus : " And we cannot but say, as at present advised, and considering the construction put on the statute, that it would have been better if the statute had avoided conveyances only against purchasers for valuable consideration, *without notice of the prior conveyance.*"

In *Evelyn* v. *Templar*, (2 *Bro.* 149.,) Lord *Thurlow* said, " that although it would have been as well, at first, if the voluntary conveyance had not been thought so little of, yet the rule

was such, and so many estates stand upon it, that it cannot be shaken. In *Doe* v. *Martyr*, Sir *J. Mansfield*, Ch. J., regretted that it had ever been decided, that even notice of the prior settlement would not defeat a subsequent purchase.

It is a sound and settled principle, that notice to a purchaser of a prior fraudulent deed will not affect the subsequent purchaser, and that such subsequent purchaser may avail himself of the fraud in the first deed; and the reason for this is solid, because, if he knew the transaction, he knew it was void by law; but to extend this principle to voluntary deeds, made by a father as a provision for his children, made, too, by a father not indebted at the time, and with every act of publicity usually attending the conveyance of an estate, would be, in my judgment, to beg the very question in controversy.

Legal inductions are very properly and necessarily drawn from legal analogies; and, in this view, let us examine the constructions which courts of law and equity have given to the 13th *Eliz.* It is perfectly well settled, that to impeach a voluntary settlement made on a meritorious consideration, it is necessary that the seller should not only be indebted, but should be insolvent, or in doubtful circumstances, at the time. The 13th *Eliz.* was intended to prevent the conveyance of property with a design to defraud creditors. If the person making a settlement is insolvent, or in doubtful circumstances, the settlement, depriving his creditors of the means of satisfying their debts, comes within the statute; but if the grantor be not indebted to such a degree as that the settlement will deprive the creditors of an ample fund for the payment of their debts, the consideration of natural love and affection will support the deed, although a voluntary one, against his creditors; for, in the language of the decisions, it is free from the imputation of fraud. Lord *Hardwicke* is very full and explicit on this point: in *Townsend* v. *Windham*, (2 *Ves.* 11.,) he said, "If there is a voluntary conveyance of real estate, or chattel interest, by one not indebted at the time, though he afterwards become indebted, if that voluntary conveyance *was for a child*, and no particular badge of fraud to deceive or defraud subsequent creditors, *that will do*." (See, also, 2 *Bro. Ch. Cas.* 20. 5 *Ves.* 384.) Both the statutes, the 13th and 27th *Eliz.*, contain the general proviso annexed to our statute, excepting from their operation those deeds only which are *bona fide*, and upon good con-

*IN ERROR.*

ALBANY,
February, 1815.

VERPLANK
v.
STERRY.

*IN ERROR.*

ALBANY,

February, 1815.

VERPLANK
v.
STERRY.

sideration ; and it is very clear, that Lord *Hardwicke,* in the opinion just cited, lays stress on the circumstance that the voluntary conveyance was for a child. The deed from *Arden* to Mrs. *Sterry* has these two circumstances : it was *bona fide,* and it had a good consideration, that of love and natural affection ; and I have no doubt that this deed is saved by the express proviso of the statute. The question naturally occurs, can the late decisions in the *English* courts, on the two statutes of the 13th and 27th *Eliz.,* be reconciled by the principles of just construction. Under the former, a man out of debt may make a settlement upon his child, and if he afterwards becomes indebted, the subsequent creditor cannot impeach the gift, because it was not made to deceive, or defraud him, nor any one else ; and, therefore, is not within the statute. How, then, can it be maintained, that, if the same father, in consideration of blood, make a *bona fide* settlement on his child, at a time when he is not indebted, this transaction shall be deemed void, and that it shall be taken for granted, contrary to the real truth and fact, that it was with intent to deceive such person as should afterwards purchase the estate, even with full notice of the *bona fide* conveyance ? As well might it be said that the settlement on a child is void, as to future creditors, as that a settlement on a child is void as to future purchasers. The settled, and decided, and uniform construction, on the 13th of *Eliz.,* is entirely opposed to the late *English* decisions on the 27th of *Eliz. ;* and it would be extremely absurd to adhere to both. It is manifest, to me, not only from the regret expressed by the judges and chancellors in *England* that such a construction had taken place in regard to the 27th *Eliz.,* but from the evident discrepancy in the constructions of the two statutes, that the latter decisions have been influenced by a sort of judicial expediency, rather than an adherence to the meaning or wording of the statute of the 27th *Eliz.* ; it was to avoid the unsettling of estates. Now, we are not in that predicament ; we can give a rational and true construction to the act, without doing violence to the meaning of the legislature, or our own consciences, or unsettling estates.

If any other consideration was necessary to bring us to this result, it would be found in the 4th section of our act, which is also copied from the two *English* statutes ; by that section a

IN ERROR.
.......
ALBANY,
February, 1815.

VERPLANK
v.
STERRY.

penalty of one year's value of the premises is imposed for maintaining or defending covinous or fraudulent conveyances.

If a subsequent purchaser, with notice, can set aside a deed like the one under consideration, it must be on the ground that the anterior deed is fraudulent; and thus a transaction, which no one can doubt to have been fair and bonâ fide, is to be considered criminal, and punished as a fraud. This would be quite contrary to another part of Lord *Mansfield's* opinion, in *Doe* v. *Rutledge*: "that no person making a voluntary settlement, by way of provision for his family, was ever considered in that criminal light."

It has been already observed, that the statute excepts from its operation deeds made on good consideration, and bonâ fide. A settlement may, in its origin, have both these requisites, and yet may become fraudulent, and kept on foot against good faith. "If a fraudulent use is made of a settlement, that, indeed, (said Lord *Mansfield*, in *Doe* v. *Rutledge*,) may be carried back to the time when the fraud commenced." And I am free to admit, that, but for the intervention of the marriage between the respondents, prior to the deed to the appellant, as the proofs stand before us, the appellant must have prevailed. *Arden's* continuance in the possession of the property, his receipt of the rents and profits, and, above all, the ignorance of the appellant that he had made the settlement, would, as respects him, have been strong circumstances that a fraudulent use had been made of the deed of settlement, and would have contaminated it. On the other hand, if the appellant had notice of the deed of settlement, the possession of the property by *Arden*, and his receipt of the rents and profits, would not have been badges of fraud, and would not have misled him ; and, in that case, he would not, in my estimation, have been a bona fide purchaser, entitled to set aside the settlement.

In affirming this decree, I proceed entirely on the ground, that the marriage between the respondents furnished a valuable consideration to the voluntary deed from Mr. *Arden* to his daughter, Mrs. *Sterry*, ex post facto ; and that, as against the appellant, the deed ceased to be a voluntary one, for good consideration merely.

In my opinion, the decree of his honour the chancellor ought to be affirmed.

IN ERROR.
.......
ALBANY,
February, 1815.

VERPLANK
v.
STERRY.

March 28th, 1815.

Such being the unanimous opinion of the court, it was, thereupon, ORDERED, ADJUDGED, and DECREED; that the decree of the court of chancery be affirmed, with costs, to be taxed, &c.; and that the record be remitted, &c.

Judgment of affirmance.