## LEWIS LEROW *vs.* EZRA WILMARTH & trustee.

If one who holds real estate in trust for others during their life, with a reversion to himself after their death, procures insurance thereon in his name as trustee, to an amount not shown to exceed the value of the life interest, the money received by him upon such insurance, after a loss by fire, belongs to him as trustee, and is not liable to be attached by his private creditors.

One who has received personal property by a conveyance which is fraudulent as against creditors has nevertheless an insurable interest therein, and in case of loss by fire is entitled to hold the money received upon such insurance, as against the creditors.

There is no absolute presumption of law that a voluntary conveyance made on a meritorious consideration is fraudulent and void as to existing creditors.

CONTRACT upon a witnessed promissory note signed by the defendant, dated March 30, 1854, and payable to the plaintiff or order.

At the second trial in the superior court, before *Ames, J.* without a jury, after the decision reported in 7 Allen, 463, it appeared that on April 15th 1854, the defendant, not being then insolvent or under any embarrassment whatever from debt, for a nominal consideration conveyed certain real estate to Charles Winslow, his heirs, successors and assigns, in trust, " First, for the benefit of my wife, Charlotte Wilmarth, and of my children, Robert E. Wilmarth, Charlotte E. Wilmarth and Augustus Wilmarth, and of the survivor or survivors of them. Second, to make such conveyance of said land as I the said Ezra and my wife the said Charlotte shall by writing by us signed, or by the survivor of us, direct." On May 17th 1854 Winslow executed an acknowledgment of said trusts.

In January, and also in April, 1856, the defendant gave his daughter some household furniture. This he insured in his own name as trustee, for the benefit of whom it might concern. The defendant at this time was prompt and punctual in his payments, and considered himself to be worth at least $15,000 over and above all his debts; and it did not appear that he had any intention to delay or defraud creditors by these gifts. He obtained in March 1858 a discharge in insolvency from all his debts due July 8th 1857, but the plaintiff's claim was subsequently revived by a new promise.

On the 23d of October 1860, Winslow, upon the written request of the defendant and his wife, conveyed the premises to the defendant, to hold in trust for the benefit of his wife and of her children, and of the survivor or survivors of them. The defendant caused the building on the premises to be insured in his name as trustee, and on the 3d of March 1862 it and the personal property referred to were destroyed by fire. The money collected on the insurance policies was deposited by the defendant in the same month in the Bank of North America, which was summoned as trustee in this action, to his credit as trustee. There was no written document or paper constituting the defendant in terms a trustee so far as the personal property was concerned, and it appeared that the Bank of North America had no other account or dealings with the defendant than as before stated.

The plaintiff filed allegations denying the validity and good faith of the alleged trust, and the judge ordered the wife and children of the defendant to be notified to appear, and they accordingly appeared and claimed that the funds in the possession of said bank belonged to them, and the judge decided that the claimants had the better right to the funds and ordered the trustees to be discharged. The plaintiff alleged exceptions.

*S. E. Sewall*, for the plaintiff. A part of the insurance money on the house belonged to the defendant, because the trust created for the benefit of his wife and children was only a life interest. The gifts of personal property by the defendant to his daughter were fraudulent in law and void, as against the plaintiff, who was an existing creditor. This doctrine has been held in England; see *Twyne's case*, 3 Co. 83 a; *Russel* v. *Hammond*, 1 Atk. 15; *Townshend* v. *Windham*, 2 Ves. Sen. 10, 11; *Kidney* v. *Coussmaker*, 12 Ves. 155; and in numerous American cases; see, among other cases, *Bayard* v. *Hoffman*, 4 Johns. Ch. 450; *Spencer* v. *Godwin*, 30 Alab. 355; *Todd* v. *Hartley*, 2 Met. (Ky.) 206; *O'Daniel* v. *Crawford*, 4 Dev. Law. (N. C.) 197; *Nicholas* v. *Ward*, 1 Head, (Tenn.) 323; *Hayes* v. *Jones*, 2 Patton & Heath, (Va.) 583; *Ward* v. *Hollins*, 14 Maryland, 158;

Lerow *v.* Wilmarth & trustee.

*Cook* v. *Johnson,* 1 Beasley, (N. J.) 54; *Choteau* v. *Jones,* 11 Illinois, 318; *Quimby* v. *Dill,* 40 Maine, 528; *Pelham* v. *Aldrich* 8 Gray, 577; *Parkman* v. *Welch,* 19 Pick. 237. In the case of *Norton* v. *Norton,* 5 Cush. 524, the statute of Elizabeth is not referred to. The gifts to the daughter having been void, the plaintiff is entitled to hold the insurance money upon the personal property.

*N. B. Bryant & A. K. P. Joy,* for the defendant and trustees.

BIGELOW, C. J. We are of opinion that the claimants are clearly entitled to the funds in the hands of the supposed trustee. The facts stated in the exceptions show that the money received from the insurance companies by the defendant did not belong to him, but came into his hands as trustee for his wife and children, who are beneficially and equitably the owners thereof.

In regard to the money received from the insurers of the building, it appears that it was paid to the defendant on a policy issued to him in his capacity as trustee, and that at the time when the insurance was effected and the loss by fire occurred he in fact held the property under a deed by which it was conveyed to him in fee, to hold in trust for the benefit of his wife and their children. The validity of the trust is not impeached, nor is it denied that the insurance was procured in good faith by the defendant for the benefit of the *cestuis que trust.* In this state of facts, we are at a loss to see any valid reason on which the money received on this policy can be regarded as the property of the defendant, or as liable to be attached by his creditors. It is true that the fee of the property was vested in him, and that the trust created by the deed was only for the life of his wife and children; but nevertheless their interest as *cestuis que trust* was an insurable one; it was actually covered by the policy; it does not appear that the amount received for the insurance exceeded the value of this life interest and as no actual fraud is shown, it cannot be inferred that the interest of the defendant as owner of the remainder in fee, after the termination of the trust for the lives of the *cestuis que trust* was intended to be included in the risk described in the policy

Lerow *v.* Wilmarth & trustee.

No part of the money, therefore, received from the insurers on the building belonged to the defendant in his own right.

The same is true of the proceeds of the policy on the personal property. On the facts stated in the exceptions, there can be no doubt that the legal title to the articles described in the policy was vested in the defendant's daughter, and that it was her interest only which was intended to be covered by the insurance, the policy having been made in the name of the defendant as trustee for the benefit of whom it might concern. But the plaintiff contends that the transfer of the personal property to the daughter was a voluntary conveyance, and was fraudulent and void as to the creditors of the defendant to whom he was indebted at the time of the conveyance to the daughter. Be it so. This does not in our view at all change the rights of the parties to the funds in the hands of the supposed trustee. If the conveyance was void as to the creditors of the defendant, it was nevertheless perfectly good and valid *inter partes.* The title passed to the daughter, and she held the property by an unimpeachable right, as against all the world except the creditors of her father. It was only in the contingency that he might at some future day become insolvent that she was liable to be disturbed in her possession and use of the property which he had conveyed to her. But this contingency in no way affected her right to obtain insurance on the property in her own name, and for her own benefit. Her insurable interest was perfect and complete. The rights of creditors were not interfered with or impaired by the insurance effected on the property for her benefit. It was a valid contract, which she had a right to make, and the benefit which accrued to her from it cannot be defeated by third persons on the ground that she held the property by title which in a certain contingency might be defeasible. It cannot be said that the money received on the policy stands in the place of the property destroyed. It is in no proper or just sense the proceeds of the property. It is a sum paid by the insurer in consideration of a certain premium, as an indemnity for the loss of property in which the person insured has a legal and insurable interest. This indemnity

cannot be taken away by setting up a contingent right or title in third persons in the property, in which the insured had a valid insurable interest at the time of the loss. If, therefore, the plaintiff could maintain the position that the transfer of the personal property to the daughter was void as to creditors, he would still fail to show a want of a valid insurable interest in her, or any right to hold the money in the hands of the supposed trustee.

We do not, however, wish to be understood as giving our sanction to the doctrine, that a voluntary conveyance by a father for the benefit of his child is *per se* fraudulent as to existing creditors, although shown not to have been fraudulent in fact, and is liable to be set aside because the law conclusively presumes it to have been fraudulent, and shuts out all evidence to repel such presumption. The better doctrine seems to us to be that there is, as applicable to voluntary conveyances made on a meritorious consideration, as of blood and affection, no absolute presumption of fraud which entirely disregards the intent and purpose of the conveyance, if the grantor happened to be indebted at the time it was made, but that such a conveyance under such circumstances affords only *prima facie* or presumptive evidence of fraud, which may be rebutted and controlled. Such seems to have been the rule heretofore adopted by this court; *Norton* v. *Norton,* 5 Cush. 524; *Thacher* v. *Phinney,* 7 Allen, 146; *Beal* v. *Warren,* 2 Gray, 447; and as established by the weight and force of reasoning in the text writers and best considered cases in this country. *Hinde* v. *Longworth,* 11 Wheat. 199. *Verplank* v. *Sterry,* 12 Johns. 536, 559. *Seward* v. *Jackson,* 8 Cow. 406 423, 434, 438; 4 Cruise Dig. (Greenl. ed.) tit. xxxii. *c.* 28, § 15 *note.* 2 Kent. Com. (6th ed.) 440, 442, *notes;* 1 Story on Eq §§ 361, 365. *Trustee discharged.*