ROBERT W. LILLARD, *et al..* Respondents, *vs.* DAVID E. SHAN-
NON, *et al.*, Appellants.

1. *Execution—Nodaway county—Act of Feb.* 1863, *as to.*—The act of February
15, 1863, in relation to Nodaway and other counties, kept an execution, issued
in one of those counties, alive after the return day.    .
2. *Execution levied on land not vitiated by prior levy on personalty.*—The levy of
an execution on personal property does not invalidate its subsequent levy on
land.
3. *Judgment in one county lien on land in another, when.*—A judgment rendered
in one county becomes a lien on land in another only from the date of its re-
ceipt by the sheriff of the latter county.  (R..C. 1855, pp. 741–2, § 21.)
4. *Land, fraudulent purchase of—Title placed in innocent third party—Effect
resulting.*—Where a fraudulent purchaser of land, in order to shield himself,
puts the title in a third party, having no knowledge of the fraud, in an action
to set aside the sale, the plea that the grantee was an innocent purchaser
without notice will not avail.

### *Appeal from Buchanan Circuit Court.*

### *Willard P. Hall,* for Appellants.

I. The execution of December, 1862, issued from the Noda-
way court came to the sheriff of Andrew county the same
month, and became a lien on the land in suit from that time;
and as Mrs. Montgomery did not purchase till February, 1863,
she took subject to that execution.  (R. C. 1855, pp. 741–2;
§ 21.)

II. The levy of the execution on personal property did not
satisfy it.  The property was returned to and sold by defend-
ant.  (10 Mo., 721; 11 Mo., 537; 26 Mo., 308.)

III. Defendants were innocent purchasers for value, with-
out notice. Hence a court of equity will not interfere. (Ham-
ilton vs. McClelland, 45 Mo., 425 ; 2 Lead. Cas. in Eq., pp. 38,
81.)

### *B. R. Vinyard, with A. H. Vories,* for Respondents.

I. If sufficient personal property is levied upon to satisfy
an execution on a judgment, such levy is a satisfaction of the
judgment. (Blair vs. Caldwell, 3 Mo., 353 ; Boone County
vs. Lowry, 9 Mo., 24 ; Bernard vs. Littlejohn, 4 Ohio, 223 ;
Reynold vs. Rogers, Adm'r, 5 Ohio, 169 ; Smith vs. Hughes,

24 Ill., 270.) The judgment in law was thereby satisfied, unless the property or the bond taken proved ineffectual at the time such proposed sale was to take place. The levy, therefore, on the land, on the 22d day of August, 1863, was without authority, and the sale of the same on the 8th day of October following, passed no title to the defendants. (Durette vs. Briggs, 47 Mo., 356; Weston vs. Clark, 37 Mo., 568.)

II. The execution, under which the sale of the land took place, was at the time of the levy and sale by the sheriff, *functus officio*. The act of Feb. 18, 1863 (Acts of 1862–3, p. 154) continuing the life of the execution, was qualified by the act of March 23, 1863 (Acts of 1862–3, p. 20); so that a levy before a return day of the execution was necessary to keep it in force after the return day. (McDonald vs. Gronefeld, 45 Mo., 28; Bank of the State vs. Bray, 37 Mo., 194.)

III. The allegation of fraud charged in the petition is fully sustained by the proof.

NAPTON, Judge, delivered the opinion of the court.

This suit was commenced in May, 1864, and originally the plaintiff was one Whitley, since dead, and subsequently Mrs. Ann Montgomery, who was the beneficiary in the deed to Whitley, and upon the death of both Whitley and Mrs. Montgomery, Lillard and others, sole heirs of Mrs Montgomery, were made plaintiffs.

The facts in the case appear to be these: On the 14th of February, 1863, one Buford Menifee, then a resident of Andrew County, Mo., and owning in conjunction with William Whitley, a tract of land on which he lived, sold his half of said farm (the whole tract being a few acres under seven hundred) to Mrs. Montgomery, a sister of Whitley, who lived in Kentucky. This purchase was made through Mrs. Montgomery's agent, one Kipinger, and a portion of the purchase money was paid down, and the remainder secured by notes. There seems to be no question on either side, of the good faith of this purchase. Mrs. Montgomery, who was then a married woman, had ample means of her own left to her by

her father, and her husband seems at that time to have been absent from Kentucky, traveling in Canada or some of the Northern States—in fact, as may be conjectured from the date, getting out of the reach of the civil commotion then rife in his State.

The consideration for this sale was $4,000. On the 16th of February, 1863, a deed was made to Whitley, trustee, who was a brother of Mrs. Montgomery, and was acknowledged on that day by Menifee. Mrs. Menifee was not then, on account of the weather, able to travel to Savannah, and her acknowledgment was not taken till July 17th, 1863, and on the 18th of July, the deed was duly recorded.

On the 6th of May, 1862, one Russell obtained judgment against Menifee for $667, in Nodaway county. On the 22d of May, 1862, an execution was issued to Andrew county, where Menifee lived, returnable on the third Monday in November, 1862. On the 3rd of October, 1862, this execution was returned unsatisfied. On the 17th of December, 1862, an alias writ issued, which was returnable on May 4th, 1863, and which came to the hands of the sheriff of Andrew county in December, 1862. On the 10th of June, 1863, this writ was levied on personal property of Menifee, amply sufficient to satisfy it, and the property was advertised to be sold on the 23d of June, 1863.

By agreement between plaintiff in the execution, the sheriff, and defendant, Menifee, the sale was postponed till the 17th of October, 1863. This agreement was entered on the execution, and Menifee gave a forthcoming bond, on which Woodcock, Pen, Gilman, &c., were securities.

There is abundant evidence that the personal property was amply sufficient to satisfy the execution. It is so averred in the petition, and the proof clearly establishes the fact.

On the 22d of August, 1863, as appears by the return and the deed made in conformity with the sale, the sheriff levied this execution upon the land in controversy, that is upon Menifee's half interest in the seven hundred acres upon which the farm was. Upon the 12th of September, 1863, the

sheriff advertised the land to be sold on the 8th of October, 1863. This day fixed for the sale, it will be observed, was nine days before the personal property already levied on, was, by the forthcoming bond, to be delivered. The sale of the land took place on the day advertised, and was bid on by John McLain, in the name of the defendants, one of whom is his son, and the other a near relation. John McLain paid the money bid, which was about $400. The deed of the sheriff was made to defendants.

The allegations of the petition, which seeks to set aside the sheriff's deed, are that John McLain and the defendants knew of this previous levy on personal property of Menifee, and charges that these transactions were fraudulent; that there was a conspiracy between the sheriff and Menifee and John McLain, to defraud Ann Montgomery out of her property; that they all knew of her title, and that the land was sacrificed.

The petition charges that defendants took possession under the deed of the sheriff; that plaintiff never lived here, had no knowledge of the lien or judgment of Russell, or of any judgment against Menifee.

The petition further charges that the rents and profits of said land are worth $1,200 per year, and charges a confederation between Russell, Menifee, Woodcock, McLain, &c., whose object was to divert the personal property of Menifee to pay debts due Woodcock & McLain. It charges that they paid the amount due on the execution over and above the $400 bid on the land, and charges notice of the deed to Mrs. Montgomery.

The answer in this case need not be specially noted, as it denies every allegation in the petition, and sets up affirmatively that the defendants have made improvements and paid taxes amounting to $5,000.

The court decreed that the sheriff's deed be set aside, and declared null; that plaintiffs recover the possession of their half interest derived from the deed of Menifee, and that defendants pay $1,025.40 for the use of the land, after deducting

taxes and improvements made by them, and monthly rents at 16.66 per month, until the plaintiffs are put in possession.

There is no doubt that the levy made by the sheriff in August, 1863, was a valid one, and that the act of February 15, 1863, in relation to the courts in certain counties, among which were Nodaway and Andrew, kept this execution in force after the return day. The levy, sale and deed, then, constitute a *prima facie* title.

Nor can it be maintained that the prior levy on personal property, of itself, destroyed the vitality of the writ. In Moss vs. Craft, (10 Mo., 720) it was held that an execution on a judgment against principal and surety, levied on property of the principal, which for want of bidders was not sold, could still be levied on the property of the surety. In the case of Williams vs. Boyce (11 Mo., 538), it was held, that the levy of an execution on property sufficient to satisfy the execution, and its release and the return of the property to defendant, was no satisfaction of the execution. And in Blackburn vs. Jackson, (26 Mo., 310) a formal levy of an execution upon defendant's property, when the property levied on was returned to him, did not operate as an extinguishment of the judgment.

The statute in force at the date of the execution, (R. C. 1855, pp. 745–6, § 21) provided that "no execution shall be a lien on slaves, goods, chattels or other personal property, or the rights or shares in any stock, or any real estate to which the lien of the judgment order or decree does not extend, or has expired, but from the time such writ shall be delivered to the officers of the proper county."

As the judgment of Russell was obtained in Nodaway county, the lien on the land of defendants only took date from the day the sheriff of Andrew county received it. Apparently at that time, on the deed of the sheriff, the title was in defendants. Had it been otherwise, it would be difficult to see the grounds of this proceeding; for if the levy and sale and deed were all illegal, the plaintiffs could have maintained an ejectment, and would have no occasion to go into a court of equity.

The propriety of the decree, then, depends upon the peculiar facts which, in this case, attended the second levy, and which were such as to satisfy the Circuit Court of an unfair combination on the part of the sheriff and defendant in the execution, and the purchaser, McLain, to transfer an execution against personal property amply sufficient to satisfy it, to a tract of land sold to a non-resident, a woman who could not be there to protect her interests. It appears very clearly that McLain, and perhaps others, were creditors of Menifee, to a small amount, and arranged with the sheriff to let alone this personal property levied on, and for the forthcoming of which ample security had been given. There was no release of the personal property levied on ; but it was arranged with a view to enable Menifee to sell the property that the execution should be transferred to the land bought in February by Mrs. Montgomery, and the deed to which was then on record, and of which sale all the parties had actual knowledge; and although the sale of the land brought only $400, the purchaser paid up the $300, etc., still due on the execution.

It is simply, then, a question of fraud. The plea of defendants being purchasers without notice is entitled to no consideration. The land was bought by McLain, and the title put in his son and nephew, who, it is likely, knew nothing whatever of the circumstances. They represent him, for all purposes of this action, and the plea of innocent purchasers, without notice, etc, cannot avail. (Meroy vs. Abney, 1 Ch. Ca., 38).

We think the decree was right, and therefore affirm the judgment. The other judges concur, except Judge Vories, who had been of counsel.