----o----

LUCIA TESSON, *et al.*, Defendants in Error, *vs.* SOCRATES NEWMAN, Plaintiff in Error.

1. *Shelley's case—Rule in, abolished in Missouri.*—Since the enactment of the statute of wills in 1825, § 18, and that respecting conveyances in 1845, § 7, the rule in Shelley's case has no longer any existence in this State. And a

deed to "A.," or in trust for "A," for life, remainder over in fee simple to the heirs, creates simply a life estate in A.

### Error to St. Louis Circuit Court.

*Samuel Reber*, for Plaintiff in Error.

*Evans Casselberry*, for Defendants in Error.

WAGNER, Judge, delivered the opinion of the court.

Plaintiffs state in their petition, that on the 29th of December, 1852, Victorine B. Tesson, being the owner in fee simple and in possession of a larger lot of land, of which the lot in controversy forms a part, conveyed the same to certain trustees and to the survivor of them in trust for the sole and exclusive use and benefit of the plaintiffs, Lucia and Coralie, and their heirs and assigns forever, free from the management or control of any husband they then or thereafter might have. A copy of the deed forms a part of the record in this case, and in it there is a provision that, at the time of the death of the said Lucia and Coralie, the trust therein created should cease and terminate, and that all of the legal and equitable estate in and to the said land should go to and vest absolutely in fee simple in the heirs of said Lucia and Coralie and their heirs and assigns forever.

The petition avers that on the 10th day of December, 1874, the plaintiffs, for the sum of two hundred and fifty dollars, bargained and sold, in fee simple and in full property, the lot in controversy, and executed and acknowledged a deed in due form, conveying to defendant and to his heirs and assigns forever, in fee simple absolute, and tendered the same to the defendant, and demanded the two hundred and fifty dollars in payment thereof, but that defendant refused to accept the deed and pay the money according to the contract, for which reason judgment was prayed.

Defendant in his answer admitted all the statements set forth in the petition, but denied that the deed from Victorine B. Tesson vested any more than a mere life estate in the plaintiffs, Lucia and Coralie ; and that the fee simple was vested in

their heirs, subject to their life estate, and therefore the said Lucia and Coralie were incapable of complying with their agreement and making a good title to the defendant.

To this answer there was a demurrer, on the ground that the deed from Victorine B. Tesson, of December 29, 1852, vested the absolute title in Lucia and Coralie, and authorized them to convey the fee. The court sustained the demurrer, and the defendant refusing to further answer, final judgment was given for the plaintiffs.

The case of Roberts vs. Moseley (51 Mo., 282), which has been cited in this court, has no bearing upon the question. In that case Mrs. Moseley, the *cestui que trust* or beneficiary in the deed, made no attempt to dispose of the property in her lifetime, and when she died it descended to her heirs, and the effort was to dispossess them, not on account of any act of hers, but in consequence of a conveyance from another party.

The main reason advanced, and the only reason that can be urged in support of the action of the court below is, that the rule in Shelley's case (1 Co., 104), is still the law of this State. If this be true, then the judgment is correct. In Shelley's case the rule was stated to be, "that when the ancestor, by any gift or conveyance, taketh an estate of freehold, and in the same gift or conveyance an estate is limited, either mediately or immediately, to his heirs, in fee or in tail, the heirs are words of limitation of the estate, and not words of purchase." Mr. Preston, in his essay upon the rule, gives the following definition of it, which has been pronounced by high authority as full and correct: "When a person takes an estate of freehold, legally or equitably, under a deed, will, or other writing, and in the same instrument there is a limitation by way of remainder, either with or without the interposition of another estate, of an interest of the same legal or equitable quality, to his heirs or heirs of his body, as a class of persons to take in succession, from generation to generation, the limitation to the heirs entitles the ancestor to the whole estate." (1 Prest. Est., 263, 419.)

The construction was, that the word "heirs," or "heirs of the body," created a remainder in fee or in tail, which the law, to prevent an abeyance, vested in the ancestor, who was tenant for life, and by the conjunction of the two estates, he became tenant in fee or in tail, and whether the ancestor took the freehold by express limitation, or by resulting use, or by implication of law, in either case the subsequent remainder to his heirs united with and was executed on his estate for life.

The rule in Shelley's case is a part of the common law, but in most of the States it has been repealed by statute. (2 Washb. Real Prop., 3 ed., 563; Wms. Real Prop., Rawle's note, 241.) In the code of 1845, our legislature enacted, that "where a remainder shall be limited to the heirs, or heirs of the body, of a person to whom a life estate in the same premises shall be given, the persons who, on the termination of the life estate, shall be the heir or heirs of the body of such tenant for life, shall be entitled to take as purchasers in fee simple, by virtue of the remainder so limited in them." This section has been continued in all the subsequent revisions. (Wagn. Stat., 1351, § 6.) The section is a literal transcript of the Revised Statutes of the State of New York, and was adopted expressly to repeal and abrogate the rule.

Chancellor Kent, in commenting on the scope, effect and operation of the section, remarks: "The abolition of the rule applies equally to deeds and wills, and in its practical operation it will, in cases where the rule would otherwise have applied, change estates in fee into contingent remainders. It sacrifices the paramount intention in all cases, and makes the heirs, instead of the ancestor, the *stirps* or *terminus* from which the posterity of heirs is to be deduced. It will tie up property from alienation during the lifetime of the first taker and the minority of his heirs. But this, it may perhaps be presumed, was the actual intention of the party, in every case in which he creates an express estate for life in the first taker, for otherwise he would not have so limited it." (4 Kent Com., 232.)

I think there is but one opinion in this State among the profession, and that is, that the rule in Shelley's case has no existence with us since the enactment of the statute. The late Judge Richardson, in concluding his opinion in Riggins vs. McClellan (28 Mo., 29). observed that the rule in Shelley's case was abrogated in this State in respect to limitations by will, by the eighteenth section of the statute of wills of 1825, and, in regard to conveyances, by the seventh section of the act of 1845, concerning conveyances.

Now, the deed of Victorine B. Tesson conveyed the premises in trust for the sole and exclusive use and benefit of Lucia M. Tesson and Coralie Polkowski and their heirs and assigns forever, and at the death of the said Lucia and Coralie the trust created was to cease and determine, and all the legal and equitable estate of, in and to the land was to go to and vest absolutely in fee simple in the heirs of Lucia and Coralie and their heirs and assigns forever. Under the operation of our statute Lucia and Coralie took simply a life estate in the premises, and the fee simple in remainder vested in their heirs.

Wherefore the judgment should be reversed, and the cause remanded. Judges Napton and Sherwood concur; Judges Vories and Hough absent.