CHARLES *et al., Plaintiffs in Error*, v. PATCH.

1. **Province of Court and Jury**: EVIDENCE. Whether there is any evidence in a case, or what its legal effect may be, is to be deter-mined by the court. If there is no evidence to support an issue, it

is the duty of the court to so instruct the jury, but if there is any evidence to support the issue, it must go to the jury, who are the exclusive judges of its weight and sufficiency, however slight it may be, and whether it be direct or inferential.

2. **Ejectment**: COMMON GRANTOR. In ejectment, where both parties claim under a common source of title, the plaintiff need not show that the title of the common grantor is the legal title.

3. **Deed** : DESCRIPTION OF PREMISES : PAROL EVIDENCE. While the deed to land must give a sufficient description of the premises intended to be conveyed, yet parol evidence is admissible to identify the land as existing on the ground where its locality is called in question.

4. ———— : ————. Where land is conveyed in a deed by a given description, and it is shown to be known by the parties to the deed, and by the residents in the neighborhood by the description so used, the latter will be sufficient to pass the title.

5. **The objection** that a city plat referred to in a deed was not properly offered in evidence, *held*, not well taken.

*Error to Jackson Special Law and Equity Court.*—HON. R. E. COWAN, Judge.

REVERSED.

*J. K. Cravens* and *Boggess & Moore* for plaintiffs in error.

(1) The land described in the petition is identified by the evidence as a part of that described in the deed from Coffman and Gregory to Elizabeth Charles, and was during all the time well known in its vicinity by the descriptions applied to it in the deeds offered in evidence. This being so, the land was sufficiently described in all of said deeds, and the plat referred to in them became a part of said deeds. *Tethrow v. Anderson*, 63 Mo. 96 ; *Means v. de Labeigne*, 50 Mo. 343 ; *Mercier v. Ry.*, 54 Mo. 506. (2) Parol proof is admissible to identify the subject of a grant. *McBride v. Allman*, 53 Mo. 551 ; *Adkins v. Moran*, 67 Mo. 100. (3) Coffman and Gregory are the common source of title of both plaintiffs and defendant.

*Holland v. Adair*, 55 Mo. 40 ; *Butcher v. Rogers*, 60 Mo. 138 ; *Miller v. Hardin*, 64 Mo. 545 ; *Union Bank v. Maynard*, 51 Mo. 548. (4) Elizabeth Charles, under the deed to her, took only a life estate with remainder in fee to the plaintiffs, her children. R. C., 1845, p. 219, sec. 5 ; R. C., 1855, p. 355, sec. 5 ; *Chiles v. Bartleson*, 21 Mo. 344 ; *Farrar v. Christy's Adm'r*, 24 Mo. 453 ; *Harbison v. Swan*, 58 Mo. 147 ; *Ford v. Flint*, 40 Vt. 382 ; *Tesson v. Newman*, 62 Mo. 198. (5) There was no fraud either in law or in fact in the purchase and taking of title in the name of Elizabeth Charles. *Pepper v. Carter*, 11 Mo. 540 ; *Payne v. Stanton*, 59 Mo. 158 ; *Read v. Livingstone*, 3 John. Ch. 481 ; *Sexton v. Wheaton*, 8 Wheat. 229. Besides the question should have been submitted to the jury. (6) The defendant can not claim that the holding of Elizabeth Charles, or his own holding under her, was of any greater estate than that of the record title, nor that they held adversely to the plaintiffs. Wash. Real Prop. (3 Ed.), top page 106, side page 92, sec. 18, note ; *Salmons v. Davis*, 29 Mo. 176–81 ; *Sutton v. Casseleggi*, 77 Mo. 397 ; 5 Mo. App. 111–122 ; *Ford v. Flint*, 40 Vt. 382. The presumptions are all in favor of the plaintiffs. *Watson v. Bissell*, 27 Mo. 220. The defendant cannot claim under the deed to Mrs. Elizabeth Charles, and at the same time claim adversely to the plaintiffs. *Ford v. Flint, supra ; Chouquette v. Barada*, 33 Mo. 249–60. In as much as the defendant has shown no title other than the deed under which the plaintiffs claim, the plaintiffs must recover. *Dale v. Faivre*, 43 Mo. 556 ; *Merchant's Bank v. Harrison*, 39 Mo. 433 ; *Morfleet v. Russell*, 64 Mo. 176-8-9 ; 2 Greenleaf's Evid. 307.

*C. O. Tichenor* for defendant in error.

(1) Where a map or plat is referred to in a deed, it becomes an essential and material part of it, and is to

have the same force and effect as if copied into the deed; hence, one can no more testify as to the contents of the plat than as to other parts of the deed. *Walker v. Boynton*, 120 Mass. 349; *Birmingham v. Anderson*, 48 Pa. St. 260; *Com. v. McDonald*, 16 S. & R. (Pa.) 391; *Orrick v. Bower*, 26 Mo. 212; *Rutherford v. Tracy*, 48 Mo. 325. (2) There was no evidence tending to show any ambiguity as to the description in the deed in controversy, and hence parol evidence relating thereto was inadmissible. *Jackson v. Sill*, 11 John. 215; *Hardy v. Mathews*, 38 Mo. 124; *Schreiber v. Osten*, 50 Mo. 515; *Bradshaw v. Bradbury*, 64 Mo. 334. Where parol evidence is admissible to locate the land described in a deed, yet if there was no lot 500 on the plat, no legal title was transferred, and if a mistake was made it could be corrected, but not in ejectment. *Reed v. Lammel*, 26 Minn. 306; *Shelton v. Heatherly*, 16 Mo. 128; *Bell v. Dawson*, 32 Mo. 79; *Holme v. Stantman*, 35 Mo. 293; *Jennings v. Brizeadine*, 44 Mo. 333. (3) What are the boundaries is a matter of law; where they are is a matter of fact. *Clark v. Wagoner*, 0 N. C. 707; *Whittelsey v. Kellogg*, 28 Mo. 404. A surveyor cannot testify as to the legal interpretation to be given a survey. *Ormsby v. Ishmen*, 10 Casey, 462; *Blumenthal v. Roll*, 24 Mo. 113. McCoy was allowed, against defendant's objection, to testify as to the contents of the plat, which he could no more do than any other witness. It was an attempt to establish title by mere oral statements, as was attempted in *Turner v. Williams*, 76 Mo. 617. Plaintiffs could not, under the circumstances, make out their case without introducing a plat of the town of Kansas. *Menkins v. Blumenthal*, 19 Mo. 496. Charles had deed made to his wife to protect himself in case he failed in business. Where a grantor makes a conveyance which is voluntary, and afterwards conveys the same land for value, it cuts out the first deed. *Doe v. Manning*, 9 East, 59; *Doe v. James*, 16 East, 212; *Buckle v. Mitchell*, 18 Ves. Jr. 100; *Roberts v. Anderson*, 3 John.

Ch. 377; *Salmon v. Bennett*, 1 Com. 554. If the deed to Mrs. Charles was made with fraudulent intent, it was as if it never existed. Without it the equitable title was perfect in Charles, and when he executed the deed of trust he conveyed it, and his wife released her dower. *Fox v. Clark*, Walker's Ch. 535; *Henderson v. Dickey,* 50 Mo. 164.

RAY, J.—This is a suit in ejectment to recover the possession of the real estate described in the petition as follows: Part of a certain tract of land formerly known as land or lot five hundred, in the orginal survey of the City of Kansas, commonly called Old Town, as the same is marked or designated on the recorded plat of said original survey and described as follows: "Commencing at the southwest corner of Fifth and Wyandotte streets in the City of Kansas: thence westwardly along the south side of Fifth street; fifty-five feet, thence southwardly at right angles with Fifth street, and parallel with Wyandotte street, to the line between townships forty-nine and fifty, range thirty-three; thence eastwardly along said township line to the west line of Wyandotte street; thence northwardly along the west line of Wyandotte street to the place of beginning." The petition is in the usual form. Suit was commenced March 24, 1876, and the ouster laid February 19, 1876. The defendant answered by general denial only. The cause was submitted to a jury, and the plaintiffs, to support the issues on their part, offered a variety of testimony, documentary and oral, the purport and nature of which will hereafter be noticed in the progress of this opinion.

At the close of the plaintiffs' case, the court, by way of demurrer to the evidence, instructed the jury at the request of the defendant, that under the pleadings and the evidence the plaintiffs could not recover. Whereupon the plaintiffs took a non-suit with leave to set the same aside, and after an unsuccessful motion for that purpose

·brought the case to this court by writ of error. The propriety of this ruling is the question now before us. In order to determine that question it will be necessary to state and consider only such portions of the evidence as may be material to the points in issue. It appears from the evidence thus offered by the plaintiffs, "that Coffman and Gregory, on the 20th day of June, 1855, for the consideration of one hundred and twenty-five dollars, by deed of general warranty, granted, bargained and sold unto Elizabeth Charles, the wife of Robert Charles, and the heirs of her body, and to their use and benefit forever," the following described lot or parcel of land situated and being in the town of Kansas, in Jackson county, Missouri, namely : "Lot number five hundred (500) as shown and designated on the recorded plat of said town of Kansas," to have and to hold the same with all the privileges and appurtenances thereto belonging unto her, the said Elizabeth Charles, and the heirs of her body and their assigns forever. This deed was duly acknowledged and recorded in the proper office on August 21, 1855. Afterwards, on November 5, 1857, the said Robert Charles and Elizabeth, his wife, by deed of trust of that date, sold and conveyed said lot or parcel of land to John Campbell, trustee for Alexander & Lansing, for the purpose of securing an indebtedness of the said Robert Charles to the said Alexander & Lansing for the sum of $1,990.79, evidenced by his promissory note of that date, due and payable eight months thereafter at six per cent. from date. This trust deed describes the property thereby conveyed as : "Lot number five hundred situated on the west side of Wyandotte street, and south of Fifth street, and so recorded in the plat of Kansas City in the county of Jackson, state of Missouri."

At a sale of this property, under said trust deed, thereafter made, it appears that said Alexander & Lansing became the purchasers thereof and received from said trustee a deed therefor ; and that conveyances thereof

were subsequently made by Alexander to McCoy, and by :McCoy to Squires, and also by said Lansing to Squires, who claimed to own and hold the same by means of said conveyances, all of which were offered in evidence by the plaintiffs; and all of which, in describing the property, follow with some variation, but substantially the descrip-tion contained and employed in said deed of trust: That is to say the deed from Campbell, the trustee, to Alex-ander & Lansing describes it as, "Lot number five hun-dred (500), situated on the west side of Wyandotte street and south of Fifth street, and so recorded in the plat of Kansas City," etc. The deed from Alexander to McCoy describes it as, "One undivided half of all that parcel or lot of land known and described on the recorded plat of Kansas City, Jackson county, Missouri, lot numbered five hundred (with the exception hereinafter stated), situated on the south side of Fifth street and west of Wyandotte street." The deed from McCoy to Squires describes it as, "Part of a lot of ground situated on the southwest corner of Fifth and Wyandotte streets, Kan-sas City, the same being numbered on the first recorded plat of said town or city as lot number five hundred (500); and that portion of ground hereby conveyed being de-scribed as follows: Commencing at the northeast corner of said lot number five hundred and running thence west-wardly on the south line of Fifth street fifty-five (55) feet; thence southwardly on a straight line, which shall run at right angles from Fifth street to the south line of said lot five hundred feet, and continuing on the same course to the south line of a certain piece of ground twenty feet in width, conveyed to said McCoy and Squires by H. H. King; thence east on said last mentioned south line to Wyandotte street (west side): thence northwardly with the west line of Wyandotte street to the beginning at the southwest corner of Wyandotte and Fifth streets." And the deed from Lansing to Squires describes it as: "A lot or parcel of ground situated on the southwest

corner of Wyandotte and Fifth streets, Kansas City, known and described on the first recorded plat of said city as land number five hundred (500); bounded north by Fifth street, east by Wyandotte street, west by Chandler street, being the same land sold by John Campbell, trustee for Robert Charles and wife to Bazel W. Alexander and Robert G. Lansing."

In addition to these deeds, the plaintiffs also offered in evidence a deed from Fry P. McGee, one of the original proprietors of the city to Gabriel Phillibert, dated in August, 1851, in which the property is described as "the following described lot or parcel of land, lying and being in the town of Kansas, in Jackson county and state of Missouri, and known as lot number five hundred (500)"; also a deed from said Phillibert to said Coffman and Gregory, in which the property is described as "the following described lot or parcel of land lying and being in the town of Kansas, in Jackson county and state of Missouri, namely, lot number five hundred (500) as shown and designated on the recorded plat of said town of Kansas." The plaintiffs further offered in evidence a title bond from said Coffman and Gregory to said Robert Charles for said property, dated in December, 1854, in which it is described as, "a block of land situated and being in the town of Kansas, county of Jackson, state of Missouri, it being the whole of a lot or parcel of ground laid out on the plat of said town as recorded in the clerk's office of said county and state, and known as block number (500) five hundred."

Robert Charles, the husband of said Elizabeth Charles, and the father of the plaintiffs, being introduced as a witness by plaintiffs, testified that his said wife, Elizabeth, died on the nineteenth of February, 1876, and that the plaintiffs are her children and the sole surviving heirs of her body. This witness being handed the said deed from Coffman and Gregory to his wife, Elizabeth, and being asked whether he took possession of any land

under that deed, and where located, what its shape, how much on Wyandotte street and how much on Fifth street, its boundary, etc., also testified against defendant's objection, among other things, in substance, as follows: That under said deed and the said title bond from Coffman and Gregory, he took possession of certain land located on the southwest corner of Fifth and Wyandotte streets, shaped something like a flat iron, running down into a hollow on Fifth street; it was eighty-seven or ninety-seven feet on Wyandotte street; three hundred and some odd feet on Fifth street, and bounded on the south by the old town line; it is called a township line he believed; that he first took possession under the title bond, and after the making of the deed he held possession thereunder until sometime in 1858 or 1859; that while he had possession he made or commenced certain improvements thereon; that he built a cellar and cistern, and got brick, lumber, joist, shingles, frames, doors, blinds—everything complete; most of the things were on the ground to build a house. (The house, however, was never built, the materials being disposed of, but the stone foundation, cellar and cistern remained on the ground). This witness also testified substantially that he bought and paid one hundred and twenty-five dollars for the property mentioned in the title bond, and caused the same to be conveyed to his said wife, Elizabeth Charles, and the heirs of her body by the aforesaid deed from Coffman and Gregory as therein expressed.

Lucas, the recorder of deeds for said county, being introduced as a witness, produced three plats of the old town of Kansas City of 1839, 1846 and 1847, which he testified had been kept in the recorder's office among its files for many years, though not filed or placed on file; that of 1846 has an endorsement of filing, but the others have not; that there is a book of record for maps kept in the office which contains copies of all the original maps, and that the plat of 1847 had actually been placed

on record in said book prior to 1855 and so kept in said office.

The plaintiffs then introduced J. C. McCoy as a witness, who being sworn and handed said plat of 1847, testified in substance, that he was a surveyor and as such made the plat of 1847 as well as that of 1846, for the original proprietors of said town ; and, against the defendant's objection, he was allowed to testify that he could locate land five hundred on said plat of 1847, and did, then and there, proceed to point out and locate the same thereon, at the corner of Fifth and Wyandotte streets. He also said that the tract (of two hundred and sixty-six acres) was partly platted off into blocks, called lands which were afterwards subdivided. His testimony also, if I understand it, is to the effect, that both plats of 1846 and 1847 show the real estate involved in this suit ; that of 1846 shows the ground without number or designation on it, while that of 1847 shows the same ground, and on it the same is marked and numbered "land five hundred." These plats, however, seem not to have been formally, or otherwise offered in evidence. This witness, also speaking of the plat of 1847 and the boundaries of land five hundred, states that land five hundred (500), as represented on the map, was bounded on the north by Fifth street, on the east by Wyandotte street and on the south by the township line ; on the west it is indefinite and runs out to a point.

Alexander, McCoy and Squires, as witnesses, all say in their testimony that they took possession, held and claimed the property under the several deeds in that behalf so offered in evidence by the plaintiffs, and that they had no other deed or claim to the property except such as these deeds and their possession thereunder gave them. Robert Charles, also, testifies that neither he nor his wife, Elizabeth, had any other deed or claim to the property, except said title bond and said deed from said Coffman and Gregory, heretofore mentioned.

Squires speaking of the property he bought on south-west corner of Fifth and Wyandotte streets, says he thinks it is fifty-five feet on Fifth street, running back—he don't know its depth,—and that there are two lots in the rear; and in speaking of the rental value of the building, he, also, says the building is not only on part of block five hundred, but also on a piece of ground back of it. All these witnesses, Alexander, McCoy and Squires, mention the stone foundation, cellar, wall, etc., commenced by Robert Charles, as being on the lot or block in question when they bought the same. Plaintiffs also offered in evidence the deposition of N. C. Claiborne, a practising lawyer, who testified that he drew the deed of trust in question from Robert Charles and wife, Elizabeth, to Campbell for the benefit of Alexander & Lansing, and in answer to the question: "State how you happened to draw it?" replied as follows: A. "To the best of my recollection, Mr. Charles, Robert Charles, told me that in some transaction with Alexander & Lansing, it had become necessary for him to make a deed of trust upon some property belonging to his wife to secure a debt due to those gentlemen, and that he had suggested to them to put the matter into my hands and I would receive a letter from the house with instructions. I received the letter, and I think that I went to Independence and got General Lucas, who was then county recorder, to examine the title to this property; was satisfied that it was all right; drew the deed, and after it was acknowledged and recorded, my recollection is that I mailed it to Alexder & Lansing at St. Louis." Q. "Who gave you the description of this real estate upon which to place this deed of trust?" A. "Mr. Robert Charles."

The defendant, by a rigid cross-examination of plaintiffs' witnesses, sought to show by the evidence thus elicited that the aforesaid deed from Coffman and Gregory to Mrs. Elizabeth Charles, the wife of said Robert Charles, for the property in question was caused

to be made by the husband to the wife to protect himself in case he failed in business; that by purchasing, paying for and taking possession thereof the husband thereby acquired an equity therein which, by operation of law, passed to Campbell, the trustee in said deed of trust, subsequently made by the husband and wife for the benefit of said Alexander & Lansing; that under the facts in evidence the said Alexander & Lansing were purchasers of said property within the meaning of the statute of twenty-seventh Elizabeth and the second section of chapter 67 of our revision of 1845, page 525, now section 2497 of the revision of 1879, and that as to them the said conveyance from Coffman and Gregory to Mrs. Charles was, therefore, fraudulent and void.

From the view we have taken of the question, it is not necessary to set out in detail the evidence on this branch of the case. Conceding, without deciding, that it was competent for the defendant, under the pleadings, to make such proof, still it may be said of the evidence touching the husband's financial condition, prospects and purposes, at the date of the deed in question, that at most it is of such a nature and character and so variant in itself as to warrant and require its submission to the jury for their consideration and determination in that behalf. This is especially so when in connection therewith, we consider the inconsiderable value of the property at that date, coupled with the husband's then comparative means and freedom from debt, together with the great length of time intervening between the date of the deed sought to be impeached and that of the trust deed under which defendant claims. The first bears date in June, 1855, and the second in November, 1857.

In proper cases, where the pleadings seek to divest the legal title to real estate from one party and vest it in another, such evidence is unquestionably proper; and if we concede, as we may do for the purposes of this case,

since no point was made on that question, that such evidence was admissible under the pleadings, as they now stand, still it may be said that inasmuch as the deed in question, though voluntary in its origin, was duly recorded in the proper office long prior to the execution of the deed of trust ; and inasmuch, also, as said beneficiaries, through their said attorney and agent, Claiborne, who drew the deed of trust, had actual knowledge of the existence and record of said deed so sought to be impeached, at the time of making said trust deed for their benefit, and through which they were purchasers aforesaid, it could not avail the defendant unless it also appeared that Mrs. Charles, the grantee therein, was party or privy to the fraud intended. Of this, however, there seems to be no evidence in the record. Sec. 2498, R. S., 1879.

The real questions, however, arising upon the demurrer to the evidence in this record are, first, whether there is any evidence of such title in the plaintiffs as entitles them to recover in this action ; and, second, whether there is any evidence to identify the land sued for and described in the petition as a part of the land described in the deed from Coffman and Gregory to Mrs. Charles and the heirs of her body.

As to the first proposition, the defendant insists that there is no evidence that the plaintiffs hold the legal title to the premises ; and as to the second, he denies that there is any competent evidence whatever to support that position, that is, to identify the land sued for with that described in said deed. If the defendant is right in his estimate of the plaintiffs' evidence, the demurrer was properly given ; but if not, then the case should have gone to the jury for their consideration and determination. The rule on this subject is well stated by Pattison in the first volume of his Digest, page 322, paragraphs 67, 68, 77 and 78, and cases cited, where it is said : "Whether there is any evidence, or what its

legal effect may be, is to be declared by the court."
"And if there is no evidence to support an issue, it is the
duty of the court so to instruct the jury;" but "if there
is any evidence it must go to the jury, who are exclusive
judges of its weight and sufficiency," "however slight
it may be and whether direct or inferential." Tested
by this rule, let us advert briefly to the character and
nature, force and effect of the plaintiffs' evidence, and
also to the position and relation of the parties, plaintiff
and defendant, to each other and to the title and pos-
session of the premises in controversy.

In the first place, it appears by the evidence that
the said deed from Coffman and Gregory to Elizabeth
Charles and the heirs of her body is the source of title,
common to both the plaintiffs and defendant; and that
neither party had or claimed any other title to said
property, except such as the deeds offered in evidence by
the plaintiffs and the possession thereunder gave them.
In such case, the rule is that the party plaintiff, in an
action of ejectment, need not go further and show that
the common grantor held the legal title. If the defend-
ant has another title it is his duty to show it, and unless
he does so the plaintiff will recover. *Holland v. Adair*,
55 Mo. 40; *Butcher v. Rogers*, 60 Mo. 138; *Miller v.
Hardin et al.*, 64 Mo. 545.

In the next place, the first question for considera-
tion is the force and effect of said deed. It is claimed
by the plaintiffs that its force and effect was to vest in
Mrs. Charles, the grantee named therein, an estate for
and during her life only, with remainder in fee to the
said heirs of her body. This construction of the deed,
as I understand, is not controverted by the defendant,
provided the same is a valid instrument and the land
properly identified by the evidence. R. S., 1845, p. 219,
sec. 5; R. S., 1855, p. 355, sec. 5; *Chiles v. Bartleson,*
21 Mo. 344, where this doctrine is expressly decided; 24
Mo. 453-4; *Harbison et al. v. Swan*, 58 Mo. 147; *Tesson*

*et al. v. Newman*, 62 Mo. 198. But the defendant further insists that the plat of the town, mentioned in the deed from Coffman and Gregory to Mrs. Charles, is an essential part of the deed itself and without its formal introduction in evidence to the jury the plaintiff cannot recover; that if no plat was shown, and he insists that none was, or if, when shown, it disclosed no tract or piece of land marked or designated thereon as "lot number five hundred (500)," then the deed conveys nothing, and the plaintiffs cannot recover; that it was not competent for the witness, McCoy, the surveyor, who as such made the plat in question, to point out, locate or identify on said plat said real estate; that it could not be identified otherwise than by the formal and actual introduction of the plat itself; that the evidence so offered by the plaintiffs was not competent or admissible for that purpose; that the parol evidence here offered was neither offered for the purpose of showing a latent ambiguity in reference to a description contained in the deed, nor for the purpose of locating the land described in the deed (as may lawfully be done) within the meaning of the rule recognized in the adjudicated cases on this subject, but in violation of that rule; and generally that there was no evidence whatever to identify the land in controversy. Numerous authorities are cited in support of these several propositions. *Jackson v. Sill,* 11 John. 215; *Hardy v. Matthews,* 38 Mo. 124; 50 Mo. 515; *Bradshaw v. Bradbury,* 64 Mo. 334; *Stone v. Clark,* 1 Met. (Mass.) 381; *Tetheron v. Anderson,* 63 Mo. 96; *McPike v. Allman,* 53 Mo. 551, and cases cited; 55 Mo. 329; 67 Mo. 100; 51 Mo. 209; *Jennings v. Brizeadine,* 44 Mo. 333; *King v. Fink,* 51 Mo. 209; 38 Mo. 121; 32 Mo. 79; 22 Minn. 121; 1 Sugd. 181.

What are the facts as shown by the record? It appears, or at least the evidence all tends to show, that the land sued for and described in the petition as "commencing at the southwest corner," etc., is situated in

the angle of Fifth and Wyandotte streets at what is called the southwest corner of said streets in said city; that there was a plat made out and recorded in the proper office long prior to the making of the said deeds so offered in evidence by the plaintiffs upon which the existence and location of said Fifth and Wyandotte streets appear and upon which also this land is marked out and defined, and had on it the word "land" and the figures "500." The evidence further tends to show that this piece of ground so situated and designated was well known to the parties conversant therewith by several designations, as "lot 500," "land 500," and "block 500," but seemed to have been better known and more frequently described by those buying, selling and occupying the same by the word "lot" than by either of the other terms, and to have been so conveyed by various deeds between the parties and their predecessors in title ; that it is a part of that larger tract which the said Robert Charles, under and by virtue of the aforesaid deed from Coffman and Gregory, took possession of and improved, or commenced to improve, for and on behalf of his wife, Elizabeth, and which said husband and wife subsequently conveyed by deed of trust to Campbell for the benefit of Alexander & Lansing, and in which trust deed they describe the property as "lot number five hundred, situated on the west side of Wyandotte street and south of Fifth street and so recorded in the plat of Kansas City," etc. This description is copied in the deed from the trustee to Alexander & Lansing, and in all the subsequent deeds down to Squires it is described as so situated with reference to said streets. .

Plaintiffs' evidence further tends to show that defendant and those under whom he claims severally took and held possession of the land in controversy under and by virtue of said deed of trust from Charles and wife to Campbell, the trustee, and the subsequent con-

veyances thereunder, down to Squires, the lessor of defendant, Patch. In all these deeds, as before stated, said "lot number five hundred" is further described as situate "on the west side of Wyandotte street and south of Fifth street," or as "situated on the southwest corner of Wyandotte and Fifth streets, Kansas City." Under such state of facts how can it be said as matter of law that such possession under such deeds, containing such recitals, both as to the location and situation of said "lot number five hundred," and as to its being so recorded in the plat of Kansas City. (when coupled with the other evidence in the cause) furnishes no evidence, as against defendant, tending to identify the land thus possessed and claimed with the land mentioned in the petition and described in the deed from Coffman and Gregory to Mrs. Charles and the heirs of her body, the common source of title to all parties.

The case at bar is somewhat peculiar, and by its facts clearly distinguishable from the cases cited and relied on by defendant. Of the cases so cited, it may be said that there appears to. be two classes as to what is or is not a latent ambiguity, and as to when parol evidence may or may not be received to show an ambiguity or to locate the land described in a deed; or whether or when such evidence is admissible to explain an ambiguity apparent on the face of the deed. It is certainly somewhat difficult to reconcile all these cases and we need not undertake to do so. In the case of *Orr et al. v. How et al.*, 55 Mo. at page 329, the court uses this language: "The plaintiffs introduced a witness who was a surveyor, and he testified that he had surveyed the lot of land, and could find it from the description in the mortgage deed. This evidence was objected to by the defendants, but the objection was overruled, and the defendant excepted. * * * I can see no objection," observed the court, "to the evidence of the surveyor which identified the description of the land as existing

on the ground.  *  *  *  The deed itself must give a sufficient description, but parol evidence may be resorted to to identify the land as existing on the ground, in cases where its locality is called in question." That seems to be just what McCoy (whose testimony is here objected to) did in the case at bar.  There are numerous cases to the effect that where land is described in the deed by a given description, and is shown by the evidence to be well known by the parties thereto and by residents in the neighborhood by the description so used, such description or deed will be sufficient to pass the title.  63 Mo. 96 ; 15 Mo. 309 ; *Hart v. Rector*, 7 Mo. 531 ; *McPike v. Allman*, 53 Mo. 551, and cases cited ; *Webster v. Blount*, 39 Mo. 500 ; 50 Mo. 343 ; 67 Mo. 100 ; 55 Mo. 328.

As to the objection that the plat was not offered or introduced in evidence, it may be a little difficult from the record to determine whether that was so or not ; or in other words to decide what it takes to constitute an introduction in evidence within the meaning of that term.  From the record it appears that the plat in question was shown and handed the witness, McCoy, who was standing in the presence of the court and jury and pointing out and showing the location thereon of the lot or land in question.  If this was done in the presence and sight of the triers of fact, can it be said that it was not introduced in evidence, within the meaning of the law ?  Or must it be held that in addition to this the plat must be formally handed or given to the jury for their inspection when not so requested by them.  From the record as to what was thus done we are hardly authorized to say that the said plat was not in evidence within the rule and the usual practice of trial courts in such cases.

Other questions involved and pressed upon our attention by counsel cannot change and are not necessary to the result already reached on the demurrer to the evi-

dence, and need not, therefore, be further considered or discussed at present. For the reasons hereinbefore stated the judgment of the trial court is reversed and the cause remanded for further proceedings. All concur, except Black, J., who, having been of counsel, did not sit in the cause.