| 90 | 63 |
|----|----|
| 98 | 412 |
| 98 | 627 |
| 90 | 63 |
| 74a | 423 |
| 90 | 63 |
| e179 | 1 27 |
| 179 | 2 697 |

## BONNEY et al. v. TAYLOR, Appellant.

1. **Fraud** : VOLUNTARY CONVEYANCE : SUBSEQUENT PURCHASER : EJECT-MENT. A voluntary deed to land, made with intent to hinder and delay creditors, is not void as to a subsequent purchaser where it

had been filed for record, or the purchaser had actual notice of it, unless the grantee therein was party or privy to the fraud intended by the grantor. R. S., sec. 2498. (Overruling *Shaw v. Tracy*, 83 Mo. 224). And the grantee may maintain ejectment against such purchaser, although she never had possession of the land.

2. ——— : ——— : ———. A subsequent purchaser can only defeat a deed for fraud by showing that the fraudulent design was entertained toward him. It will avail him nothing to prove a design to defeat existing creditors.

*Appeal from Lewis Circuit Court.*—HON. BEN. E. TURNER, Judge.

AFFIRMED.

*F. L. Schofield* and *H. S. Lipscomb* for appellant.

(1) Jeremiah Taylor was, at the time the voluntary deed to the plaintiffs was made, indebted to the extent of insolvency, and the conveyance is void. Bump on Fraud. Con. (3 Ed.) 281, and authorities cited. (2) If his failing circumstances resulted in insolvency the deed is void. Authorities, *supra*. (3) Plaintiffs are not defending their possession of property under a voluntary deed, but ask its enforcement against defendant, who holds under a deed for value, and in his person represents the creditors of plaintiffs' insolvent grantor. (4) Inquiry into the good faith of the grantee is only necessary where there is a valuable consideration for the transfer. The mere acceptance of the transfer without a valuable consideration is of itself sufficient evidence of a participation in the debtor's fraudulent intent. The only consideration good within the meaning of the statute of frauds is a valuable consideration. It is the innocent purchaser and not the innocent donee that is protected. The only question is the motive of the giver and not the knowledge of the donee. Bump on Fraud. Con. (3 Ed.) 198, and authorities cited, and 268, and authorities cited.

(5)  The deed to plaintiffs was made with fraudulent intent.  When the grantor was engaged in making this, with other deeds, he said to witness, Million, " That the mill company (of which he was a member) is swamped ; he was looking for trouble and he wanted to deed his lands to his children."  The deed being fraudulent in fact is, as Judge Scott says in *Howe & Wallace v. Waysman*, 12 Mo. 172, "as though it had not been made.  The property is where it was before anything was done." *Henderson v. Dickey*, 50 Mo. 161.  The burden of proof was severely on plaintiffs to show that Jeremiah Taylor, their grantor, was, at the time he made the deed, in a condition financially to give away his property.  A fraudulent deed will not be enforced against a purchaser for value in possession, and we submit never was enforced except as against a fraudulent grantor who is estopped from setting up his own fraud.  *Howe et al. v. Waysman*, 12 Mo. 169 ; *Shaw v. Tracy*, 83 Mo. 224.

*Blair & Marchand* for respondents.

SHERWOOD, J.—The plaintiffs brought ejectment for forty acres of land formerly owned by Jeremiah Taylor, their ancestor.  Being in embarrassed circumstances, and largely indebted, indebted to such an extent that it was understood that his liabilities would consume all of his estate, he conveyed the same to the several members of his family, the forty acres in dispute to the plaintiffs.

There were six to ten of these voluntary conveyances, which were executed about the middle of February, 1877, and filed for record before a subsequent conveyance made by the same grantor to the defendant, to be presently noticed.  There can be no question that the purpose of the grantor, Jeremiah Taylor, was to hinder or delay his creditors, but in this fraudulent purpose there

is no evidence that the grantees in the voluntary conveyances participated.

On the sixth of March, 1877, proceedings in bankruptcy were instituted by Cole Brothers, of St. Louis, in the United States district court of St. Louis, against Jeremiah Taylor, based in large part on the very deeds he had made. Process issued and served upon him. He called to his aid an attorney, who advised that he was in no condition to make said deeds, and that the grantees should re-convey to him at once. His son-in-law, Mr. Patterson, and his son, J. B. Taylor, re-conveyed. A deed was written for plaintiffs to re-convey. They did not make it. What farther to do amidst the financial ruin was the question with Jeremiah Taylor and his family. It was proposed and advised that as the father and mother were too advanced in years to cope with a debt so large, their children should take the whole estate, provide for the parents a comfortable home and support the remainder of their days, and meet the debts. This proposal, declined by Messrs. Patterson, J. L. and I. B. Taylor, was accepted by William I. Taylor, defendant. Thereupon Jerry Taylor and wife, on the thirtieth day of May, 1877, conveyed, by general warranty deeds, his landed estate, including the forty acres in question, to defendant, who assumed the payment of said debts. Time was given him by the creditors, and a dismissal of the bankrupt proceedings secured. During the lifetime of Jeremiah Taylor he remained undisturbed in his old home, and his widow is now there with her son, the defendant. When Jeremiah Taylor made this voluntary deed to plaintiffs, he retained the actual possession of the land in question, and on making the deed to defendant of the thirtieth of May, 1877, delivered and surrendered to him the immediate actual possession thereof, and he has ever since held and enjoyed it. Plaintiffs were never in possession.

On this state of facts the court declared the law thus:

"1. It is admitted that defendant, at the time he contracted with Jerry Taylor, had full knowledge of the existence of plaintiffs' deed. There is no evidence that plaintiffs were parties or privies to any fraud in the execution of the deed to them. Therefore, it is immaterial whether, at the time of the execution of the deed to them, said Taylor was or not indebted or in failing circumstances."

"2. That the evidence of the plaintiffs having shown that their deed was filed for record before J. Taylor made his deed to defendant, and the evidence of the defendant showing that defendant, at the time he took the deed from J. Taylor for the land in controversy, had actual notice of the deed to plaintiffs for the land in controversy. And the evidence failing to show that plaintiffs were parties or privies to any fraud upon the part of J. Taylor in making the deed to plaintiffs for the land in controversy, plaintiffs are entitled to recover the possession of said land in this suit."

The chief question presented by the record is the correctness of these declarations. The determination of this question requires an examination of two sections of the statute relating to fraudulent conveyances, which are as follows:

" Section 2497. Every conveyance or assignment, in writing or otherwise, of any estate or interest in lands, or in goods and chattels, * * * made or contrived with the intent to hinder, delay or defraud creditors, * * * or to defraud or deceive those who shall purchase the same lands, * * *. shall be from hence-forth deemed and taken, as against said creditors and purchasers, prior and subsequent, to be clearly and utterly void."

" Section 2498. No such conveyance or charge shall be deemed void, in favor of a subsequent purchaser, if

the deed or conveyance shall have been duly acknowledged, or proved and recorded, or the purchaser have actual notice thereof at the time of the payment of the purchase money, unless it shall appear that the grantee in such conveyance, or person to be benefited by such charge, was party or privy to the fraud intended."

Section 2 of the laws of 1825, pages 401-2, is a substantial transcript of section 2, chapter 5, 13 Eliz., and of section 2, chapter 4, 27 Eliz., and there is no such section to be found in the laws of 1825 as section 2498. That section is first found in the laws of 1845, and in the margin are the very significant words: "Qualification of preceding section as to subsequent purchasers." This marginal explanation continues in the revised statutes of 1855, and the general statutes of 1865. Taking this statute as *res integra*, it seems to me that it needs no construction; that it is its own interpreter; for construction has no office to perform where the language employed is plain and unambiguous. Section 2497 affords protection to two classes of persons: 1. *Creditors*, who are protected against "every conveyance, assignment, etc., made or contrived with the intent to hinder, delay or defraud them." 2. *Purchasers*, who are protected against "every conveyance, etc., made or contrived with the intent to defraud or deceive those who shall purchase the same lands," etc.

And in both classes of cases the conveyance, if made with either contraband intent, is declared, "as against said creditors and purchasers, prior and subsequent, to be clearly and utterly void." But right here section 2498 comes in with its important qualification, declaring, in the clearest possible terms, that "no such conveyance or charge shall be deemed void, in favor of a subsequent purchaser, if the deed or conveyance shall have been duly acknowledged, etc., or the purchaser have actual notice thereof * * * unless * * * the grantee in such conveyance * * * was party or privy to the

fraud intended." This language is so plain that it needs no adventitious aids of argument or gloss to explain or enforce its manifest provisions, and fully justifies the declarations of law already quoted, and but for decisions heretofore made by this court, and now relied on here, such a work would be one of supererogation.

The case of *Howe v. Waysman*, 12 Mo. 169, was one where Waysman and Roy, sons-in-law of James Howe, and A. J. Howe, his minor son, brought trover against John H. Howe, who, for a full and fair value, in April, 1831, bought from James Howe certain slaves then in his possession, which said James Howe, then indebted and insolvent, with his own means, had bought in July, 1829, in Kentucky, and, with the design and for the avowed purpose of shielding the slaves from the creditors, thereupon had the conveyance made to his three minor children, two of whom, respectively, afterwards intermarried with Waysman and Roy. The bill of sale was not put to record, nor did the purchaser, John H. Howe, have any notice of the conveyance made in Kentucky to the minor children of James Howe, at the instance of the latter ; and all evidence of the fraudulent conduct of James Howe was rejected, and the children prevailed in the lower court ; but the judgment was reversed and the case remanded with directions to receive evidence of the fraud. But it is to be observed of the case that the statute of 1845, with the important qualifications as to subsequent purchasers contained in section 2498, was not in force when the fraudulent transactions took place. And certainly that case cannot be regarded as being an adjudication of the force and effect of a section not in existence when the transaction to be passed upon occurred. So much for that case.

The case of *Henderson v. Dickey*, 50 Mo. 161, is very obscurely reported. Its rulings are based in large part on the preceding case, and takes no note of the change produced by the addition of the qualifying words

contained in section 2498.    The circumstances appear to
have been these:  Wasson, in embarrassed circumstances
and desirous of keeping his property out of the reach of
his creditors, bought block E in Carondelet of Bowlin,
and paid him for it, but, for the purpose aforesaid, had
the conveyance made to his brother-in-law, Taylor, who
paid nothing, and who was well acquainted with the
design for which the block was conveyed to him, and he
was to re-convey when Wasson recovered from his
financial embarrassment.    Subsequently, Taylor refused
to re-convey to Wasson, but did attempt to convey to
his sister, Mrs. Wasson, but in attempting to do so, by
mistake, conveyed to his sister block H, instead of block
E.    Subsequently, Wasson and wife, in payment of a
debt due from Wasson to Henderson, conveyed to him
block E, and after her husband's death, Mrs. Taylor,
who had refused to join with her husband in his con-
veyance to Mrs. Wasson, relinquished to Henderson her
interest in block E.    After this Henderson died, and
the heir of Taylor and her husband, Dickey, took
possession of block E, claiming under Taylor.    Where-
upon Henderson's heirs instituted equitable proceed-
ings to correct the mistake aforesaid and for posses-
sion of the block ; and the mistake made, being plainly
established, and Taylor's heir being a mere volunteer,
the equities of the case were so clearly with the plain-
tiffs as to require no discussion and no application of
the statute in question ;  for the circumstances of the
case, when sifted of all extraneous matter, left but
remaining an answer to be returned to this question :
Whether a mistake in the description of land can be
corrected against the heir of one who held the land in
the capacity of a mere trustee, and while thus holding
it, made such mistake in attempting to convey it.

The case of *Ins. Co. v. Cravens*, 69 Mo. 72, simply
involved the question as to which of two creditors had a
better title and superior equity, the one who bought at a

sale under a duly recorded deed of trust, made by the husband and wife, when the title had been placed in the wife to defraud the creditors of the husband, or the creditor who subsequently thereto acquired a lien on the land by transcript of a judgment from a justice of the peace, and sold the land thereunder, prior to the sale under the deed of trust. That case is not in point here. No more is that of *Lillard v. Shannon*, 60 Mo. 522, where, among other things, it is simply ruled that where land is fraudulently bought at execution sale and the title placed in a third person, who pays no money therefor, but is merely used as a convenience, that such third person cannot assume the role of an innocent purchaser. Equally irrelevant to the present inquiry is the case of *Gamble v. Johnson*, 9 Mo. 598, in relation to a conveyance being void as against the claims of creditors, when made by an insolvent to a grantee on good consideration, though such grantee were ignorant of the insolvency and innocent of the fraud.

This brings me to consider the case of *Shaw v. Tracy*, 83 Mo. 224, where the cases just cited are referred to with approval and in support of the position there taken. And it is justly claimed that that case, if adhered to, is decisive of the present one. But in that case, the statutory qualification as to subsequent purchasers was not adverted to. And it is there taken for granted that our statute is a substantial reënactment of the English statutes, with such modifications as embody the English construction of those statutes. And it is also asserted in that case that our statute is substantially that of New York, from which it seems to have been taken, and that our legislature will be presumed to have enacted that statute in the sense in which it had been construed in the state from which it was taken. The English statute in relation to fraudulent conveyances had been construed in New York, and Chancellor Kent had held, though with great reluctance, and because he felt

himself bound by the English precedents, that where a voluntary conveyance was made it could not prevail against a subsequent purchaser with implied notice only of the prior deed. *Sterry v. Arden*, 1 Johns. Chy. 261. This was in 1814.

This decree was afterwards affirmed on other grounds in the court of errors. *Verplank v. Sterry*, 12 Johns. 536, in 1815. But Spencer, C. J., in an elaborate opinion, combatted the English doctrine, contending that no voluntary conveyance not originally fraudulent was within the statute, and the court of errors left that point open for future determination. But the doctrine of Chief Justice Spencer was afterwards asserted in the Supreme Court of that state (*Jackson v. Town*, 4 Cow. 599), where it was ruled that a deed made without fraudulent intent, and on a good consideration, was valid within 27 Eliz., as against subsequent purchasers. This was in 1825.

In 1829 the legislature of New York enacted section 2, Revised Statutes, page 134, which is similar to section 2498, whereby the difficulty experienced by Chancellor Kent in *Sterry v. Arden, supra,* was done away with, by providing that either constructive or actual notice should prevent a conveyance from being deemed fraudulent in favor of a subsequent purchaser, unless it should appear that the grantee in such conveyance was privy to the fraud intended. And in the margin of the section it is noted that it is a qualification of the preceding section.

This legislative change, in view of the circumstances already noticed, possesses marked significance, and Chancellor Kent has called attention to it. 4 Kent, 464. Our statute of 1845 must be presumed to have been adopted in the light of those decisions and of that additional statute. And this change must be borne in mind when considering the rulings made in other states possessing no such statutory enactment.

But in this case it is not to be overlooked that, not only is there no evidence whatever that the plaintiffs were privy to the fraud intended, but there is no evidence that Jeremiah Taylor contemplated any fraud except as against *existing creditors ;* there is not a particle of evidence that he even remotely entertained a fraudulent design as to subsequent purchasers. Unless such design was entertained against them, it would avail nothing to defendant to prove a design to defeat existing creditors. As before stated, the statute extends its protection over two classes of persons, creditors and purchasers, and to assert that proof of a design to defraud one class is any proof of a design to defraud the other is to confound and obliterate the clearest possible statutory distinction. The statute in each instance levels its denunciations against "*the fraud intended,*" and not against some other fraud.

This distinction is clearly pointed out in the dissenting opinion of Henry, J., in the case now under discussion, and is supported, as there shown, by abundant and convincing authority. *Foster v. Walton,* 5 Watts (Penn.) 378; *Lancaster v. Dolan,* 1 Rawle, 231; *Stevens v. Morse,* 47 N. H. 532, and cas. cit. After a careful examination of the authorities, I have no hesitation in saying that the dissenting opinion in that case should have been the opinion of the court. It is proper to add that the views here advanced, as to the proper construction of the statute in question, have since been recognized, to some extent, in the case of *Charles v. Patch,* 4 West. Rep. 76; s. c., 87 Mo. 450, by the learned judge who delivered the opinion of the court in *Shaw v. Tracy, supra.* For the reasons already given the doctrine of that case is hereby disapproved, and the judgment of the lower court is affirmed. But in affirming that judgment, it is a matter of regret with us all that the praiseworthy effort of the defendant to protect his parents in their old age should not have met with more

generous recognition at the hands of the plaintiffs, but considerations like these cannot prevail against the mandates of the law, and we only mention them to show the reluctance with which we affirm the judgment. Henry, C. J., and Black, J., concur; Norton and Ray, JJ., dissent.